\* PEACH THOMAS ET AL. *v.* R. F. CARTER.

*Insolvency.    Suit begun  after filing of petition.    Joint  action by*
*sureties.    Amount of damages.*

1.  A creditor who has not presented his claim against an insolvent estate,
    may begin a suit against the insolvent after the filing of the petition,
    and prosecute it to final judgment under the same limitations as
    though such suit had been commenced before the institution of in-
    solvency proceedings.
2.  Sureties cannot maintain a joint action against their principal unless
    the payment is made from a joint fund; but where they deposit a
    sum with the creditor to their joint order to be held as collateral
    security for their joint liability and from which such liability is
    finally discharged, that is a joint fund, although made up in the
    first instance from individual deposits by the several sureties.
3.  If other sureties have contributed to this fund, who do not join in the
    action, the plaintiffs can only recover as damages the amount which
    they have themselves paid; *i. e.* the amount paid out of the fund less
    the other contributions to it.

General assumpsit.    Plea, the general issue with notice of
special matter.    Trial by jury at the December term, 1889,
Ross, J., presiding.    Judgment for the plaintiffs for the amount
paid by them less the amounts received from Hall's estate and
Jones.    Both parties except.

The case appears in the opinion.

*Alexander Dunnett*, for the plaintiffs.

*Bates & May*, for the defendant.

The damages recovered by the plaintiffs were properly re-
duced by the amount received from Jones and the Hall estate.

\* Heard at the May term, 1890.

39

A surety can only claim indemnity to the amount which he has actually paid. *Moore* v. *Moore*, 4 Hawk. N. C. 358; S. C. 15 Am. Dec. 526; 2 Dan. Neg. Inst. sec. 1342; *Boardman* v. *Paige*, 11 N. H. 431; *Henry* v. *Goldney*, 15 M. & W. 494.

The payment was not made from a joint fund, and hence the plaintiffs cannot maintain a joint action. *Whipple* v. *Briggs*, 28 Vt. 65; *Powell* v. *Mathias*, 4 Ir. Law, 83; S. C. 40 Am. Dec. 427; 51 Am. Dec. 415; *Fletcher* v. *Jackson*, 23 Vt. 531; S. C. 56 Am. Dec. 98; *Prescott* v. *Newell*, 39 Vt. 81; *Clapp* v. *Rice*, 15 Gray 557; S. C. 77 Am. Dec. 387; *Hadsell* v. *Hancock*, 3 Gray 526; *Chandler* v. *Brainerd*, 14 Pick. 285; *Doolittle* v. *Dwight*, 2 Met. 561; *Neal* v. *Newland*, 4 Ark. 506; S. C. 38 Am. Dec. 52; *Bunker* v. *Tufts*, 55 Me. 180; *Lombard* v. *Cobb*, 14 Me. 222; 1 Pars. Cont. 34, 35; *Doremus* v. *Selden*, 19 John. 213; *Angus* v. *Robinson*, 59 Vt. 585; *Cartwright* v. *Gardner*, 5 Cush. 273; *Brewer* v. *Stone*, 11 Gray 228.

The opinion of the court was delivered by

MUNSON, J. It is claimed that this judgment cannot be sustained because of the proceedings against the defendant in insolvency. This claim is not based upon the final adjudication, for the debtor did not obtain his discharge. It is not contended but that if the suit had been pending at the time the petition was filed, it could have been kept alive until the question of discharge was settled, and judgment have then been taken. But the suit was brought after the filing of the petition; and it is insisted that from the filing of the petition until the failure to obtain a discharge, the plaintiffs were not entitled to sue.

The purpose of the insolvent law is to secure the equal distribution of the debtor's estate among his creditors, and, if certain requirements of the law are met, to relieve the debtor from further liability. There is always the possibility that the debtor may be left liable for the debts not satisfied by his estate. In some instances the creditor may lose the benefit of this liability, if

Thomas et al. *v.* Carter.

the commencement of a suit must be deferred until the right to take final judgment is established. The bringing of a suit during insolvency proceedings by a creditor who does not present his claim is nowhere expressly prohibited, and we see nothing in the general tenor of the law which indicates an intention to prohibit it. It seems to have been considered that nothing more was needed for the protection of the debtor, than the obligation placed upon the court to stay suits upon application as long as the determination of the question of discharge is not unreasonably delayed. The language of the section which provides for a stay of suits is not inconsistent with its application to suits brought after petition. R. L. 1797.

It is also claimed that the defendant is not liable to the plaintiffs jointly. The suit grows out of a contract of suretyship. The plaintiffs, with Jones and Hall, were sureties for the defendant on a note given to the Passumpsic Savings Bank. The bank brought suit on the note, and obtained judgment against all the signers. An execution taken out on this judgment was in part satisfied from the property of the defendant. The balance of the judgment was paid by the plaintiffs in the manner hereafter stated.

Hall having been adjudged insolvent, his assignee paid the plaintiffs $600, they agreeing to save the estate from further loss. At the time of this arrangement, the plaintiffs entered into an agreement among themselves to share equally the profits or losses arising from their liability as sureties. Before it was known what amount would be needed, the plaintiffs placed in the bank, to their joint credit, a deposit of $1,250, which was to be held by the bank as collateral security for the payment of such part of the judgment as might not be satisfied from the property of the principal. This deposit was made up of the $600 received from Hall's assignee, $230 furnished by the plaintiff Dunnett, and three sums of $140 furnished severally by the other plaintiffs. The balance of the judgment was satisfied from the money so deposited, and this suit is brought to recover the amount paid.

It is well settled that if sureties pay the debt of their principal from a joint fund they have a joint action against him; but considerable difficulty has arisen in determining what shall be considered a joint fund, and it is insisted that the deposit from which this payment was made does not come within the rule established by the decisions. We are not aware of any case in which the fund presented the characteristics of the one in question, but a reference to some of the cases may aid us in giving to this fund a proper classification.

In *Osborne et al. v. Harper,* 5 East 225, a judgment had been recovered against the plaintiffs jointly, and the case showed that this judgment had been paid by the plaintiffs' attorney at their request. During the argument the court expressed great doubt as to the right of a joint recovery. Lord Ellenborough finally said that if the plaintiffs had borrowed the money jointly of their attorney it might be considered a joint payment by them, and so support a joint action, but that if each of the plaintiffs contributed his share of the money put into the attorney's hands, the demand against the defendant would not be joint, and each must sue separately for his advancement. The attorney was then directed to make an affidavit, stating in what manner the money paid by him had been obtained; whether he had paid it out of his own pocket upon the joint credit of the plaintiffs, making them jointly liable to him for the whole, or whether each of the plaintiffs had in the first instance contributed so much of his own money. The affidavit disclosed that the attorney had advanced a part of the money upon the joint credit of the plaintiffs, and had borrowed the remainder upon their joint note. It was thereupon held that this created a joint fund for the discharge of the execution, and that consequently the plaintiff's were entitled to maintain a joint action.

In *Lombard et al.* v. *Cobb,* 14 Me. 222, the plaintiffs had become sureties for the defendant on a bond given by him to the town of which he was collector, and the town had afterwards

taken the plaintiffs' note and endorsed the amount of it on the bond. The plaintiffs had subsequently paid their note, but it was not shown by whom the amount was paid, nor from what fund. The court held that inasmuch as it did not appear whether the payment was made from a joint fund or separately by each, nor that there was any partnership or joint interest, the presumption was that each fulfilled his duty by paying his own share. It was asserted in argument that the payment was in fact made out of a joint fund, obtained by the plaintiffs' performing a joint contract for the support of the poor, and it was said that if this had been shown it would have been sufficient to enable them to maintain a joint action.

In *Pearson et at.* v. *Parker*, 3 N. H. 366, the plaintiffs being called upon to take up a note which they had signed as sureties for the defendant, paid a part of the demand with money obtained on their joint note, and satisfied the balance by giving their joint note. The court considered that this was payment from a common stock, and that the joint action was properly brought. In *Doremus et al.* v. *Selden*, 19 Johns. 213, which was a suit by endorsers against prior endorsers, the plaintiffs, although jointly liable on the note as partners, had paid it by giving their separate notes; and it was held that as there was no community of interest in the money paid a joint action could not be maintained.

In *Clapp et al.* v. *Rice*, 15 Gray 557, the holder of the note on which the plaintiffs and defendant's intestate were endorsers, had recovered judgment against the plaintiffs and issued execution thereon, and this execution had been satisfied in one payment made by the plaintiffs, each contributing an equal share of the part which it was for the defendant's intestate to pay. The court said: "We are of opinion that when three persons, each of whom is responsible for an entire sum due from another, join in making the payment of that sum by a contribution agreed on among themselves for that purpose, they may join in one action

to recover it from the person for whose benefit the payment has been made."

There are but few cases in this State in which the question has been considered. *Fletcher et al.* v. *Jackson et al.*, 23 Vt. 581, was a bill to compel contribution. The bill set up that a judgment had been recovered against the orators, and that it had been paid by them. The opinion is referred to for a statement of the facts established by the testimony taken, but without stating the manner of payment the court says: "We entertain no doubt upon the proofs in the case, that the plaintiffs paid the judgment against them jointly, and may well sustain this suit in their favor jointly." *Whipple et al.* v. *Briggs*, 28 Vt. 65, was a joint action by sureties against their principal. The plaintiffs had given their joint notes to the holders of the paper on which they were sureties, and the notes so given had been taken as payment. This was considered to be clearly a payment from a joint fund. In *Prescott et al.* v. *Newell*, 39 Vt. 82, the plaintiffs had made payments for their co-surety from their individual resources, but under an agreement that they would stand together and share the burden equally; and it was held that as to these payments a joint action could not be maintained.

If the character of this fund is to be determined by the relation of the plaintiffs to it after the deposit was made, it must be considered a joint fund. It stood in their joint names; was held by the bank as collateral against them jointly, and could be disposed of by them only through a joint order. But if the origin of the fund is controlling, the situation is different. Leaving the $600 out of consideration for the present, the remainder of the fund was made up of the several and unequal contributions of the plaintiffs. It was not a joint fund, except as made so by the action of the plaintiffs among themselves. It was not the result of any joint liability assumed by the plaintiffs to some other person, nor the product of any undertaking in which they were jointly interested. It is evident that upon the authority of many

of the cases this deposit could not be considered a joint fund within the meaning of the rule.

The foundation of the suit is the implied promise of the principal to indemnify his sureties. The undertaking of the sureties is several, and the promise of indemnity which the law raises at the time of the undertaking is therefore several. It was only with hesitation that sureties were permitted to sue jointly on the ground of joint payment. As late as the decisions in *Gould* v. *Gould*, 8 Cow. 168, and 6 Wend. 263, it was doubted whether sureties could so shape a payment as to give themselves a joint claim; and *Osborne* v. *Harper* was spoken of as a case decided upon its peculiar circumstances, and a doubtful precedent in cases not identical. But the rule which permits sureties to sue jointly when they have paid the claim by their joint note, or with money obtained upon their joint credit, is well established, and has been fully approved in this State. So much having been decided, we see no objection to going further.

It is evident that the law as now settled permits sureties to so shape a payment as to give themselves a joint claim upon their principal. If these plaintiffs had provided the deposit by discounting their joint note, instead of making up the deposit from the money they severally had on hand, there would have been no question as to their right to maintain a joint action. The practical result of the doctrine is to make the liability of the principal several or joint at the option of the sureties; and so long as sureties can make their principal liable to them jointly by borrowing upon their joint note the money used in payment, we see no reason why they may not be permitted to accomplish the same end by making a joint deposit to meet the liability. The fund from which this payment was made having been joint in fact, we are not disposed to follow the authorities which would deprive it of that character by looking to the several payments of which it was made up. We hold that the payment from this deposit was such as to entitle the sureties to maintain a joint action.

Thomas et al. *v.* Carter.

A question is raised by the plaintiffs as to the amount they are entitled to recover. The transaction between Hall's assignee and the plaintiffs has been stated. The plaintiffs also received $125 from their co-surety Jones, in his notes, which were afterwards paid to the plaintiffs' use. There was no agreement between the plaintiffs and the parties making these payments that the payments should be applied on this indebtedness. Nothing further appears in regard to the matter. In entering judgment for the plaintiffs, the court below deducted from the amount paid by them the sums they had received as above stated. This is claimed to have been error.

It is true that the plaintiffs have paid a certain amount to the holder of this note. But a part of this amount they have received from their co-sureties. The loss which the plaintiffs have sustained by reason of their liability for the defendant is measured by what they have paid above the sums so received. The obligation of the defendant is to recompense the plaintiffs for the loss they have actually suffered. That obligation is satisfied by the judgment rendered below. The sums excluded from that recovery, although not paid by Hall's assignee and Jones to the creditor, were properly paid by them on account of their suretyship liability, and are losses which the principal is holden to make good to them.

*Judgment affirmed.*