BARTON NATIONAL BANK, et al. *v.* G. W. ATKINS, et al.

January Term, 1899.

Present :  TAFT, C. J., TYLER, MUNSON, START and WATSON, JJ.

Opinion filed November 12, 1899.

*Repeal by implication—Liability of stockholders.*—Section 9 of the charter of the Vermont Investment and Guarantee Company providing, among other things, that its stockholders should be liable for the indebtedness of the corporation beyond their stock to an amount equal to the par value of their stock, was repealed by implication by No. 79, Acts of 1886, which was a revision of the whole subject matter of said section and was clearly intended as a substitute therefor.

3

*Effect of repeal—Obligation of contracts.*—Such repeal was prospective only in its operation, and did not affect the rights of creditors in respect to enforcing the payment of prior indebtedness, and therefore was not an impairment of the obligation of contracts.

*Liability follows stock.*—A statutory liability of stockholders for the indebtedness of the corporation passes, by a transfer of the stock, to the purchaser, in the absence of a controlling statutory provision.

*Liability enforceable in equity.*—Such liability is properly enforceable in equity, where alone a complete, convenient and comprehensive remedy can be obtained.

*Liability to be enforced by receiver.*—In the case of an insolvent corporation in the hands of a receiver, the proceeding in equity to enforce the stockholders' statutory liability should be by the receiver under the direction of the court.

*Liability of estates of deceased stockholders, heirs, and legatees.*—The liability of the stockholders being purely equitable commissioners upon the estates of deceased stockholders are without jurisdiction in the matter, and the liability is enforceable in equity against such estates, and against heirs and legatees into whose hands estates so chargeable have come.

*Insolvency—Assignees*—The assignees in insolvency of a co-partnership, liable as a stockholder, are proper parties.

*Insolvent estate of deceased partner.*—In equity, the creditors of an insolvent partnership, one of whose members died pending the insolvency proceedings leaving his separate estate insolvent, when they have exhausted the effects of the partnership, stand on an equal footing with the personal creditors of the deceased partner in respect to the satisfaction of any unpaid balance of their claims out of the separate estate of the deceased partner.

*Definition—Debenture*—The word "debenture" does not of itself import a secured indebtedness.

CHANCERY. Heard on bill, demurrers and plea, Orleans County, September Term 1898, *Munson*, Chancellor. By agreement of counsel and without hearing it was adjudged and decreed *pro forma* that the demurrers and plea be sustained and the bill dismissed. The orators appealed.

The case is stated in the opinion.

*W. W. Miles* for the orators.

*W. L. Burnap* and *Seneca Haselton* for the defendants generally.

*Joel C. Baker* for the defendant estates and heirs.

*Charles M. Wilds* and *E. J. Ormsbee* for the defendants Farrington and Thayer as assignees of G. and F. E. Briggs, co-partners, and as administrators of F. E. Briggs. ·

WATSON, J.   The allegations in the bill show, among other things, that the Vermont Investment and Guarantee Company was organized under a special act of the Legislature of this State, approved November 10, 1884, section nine of which reads:

" This corporation shall not transact business until at least twenty-five thousand dollars of its capital stock has been actually paid in ; and no part of the capital stock shall be withdrawn so long as the corporation has any unpaid or outstanding indebtedness or liability ; and for any injury or damage coming to any person or party from a violation of the provisions of this act, the stockholders shall be personally liable, and such injury or damage may be recovered by such person or party in an action on the case, founded on this statute, and the stockholders shall be personally liable for the indebtedness of the corporation beyond their stock, to an amount equal to the par value of their stock."

That the company did business until the first of May, 1893, when it became wholly insolvent and unable to pay its debts, and having a large number of creditors in this and many other states, among whom were the orators ; that at the June Term, A. D. 1893, of the Court of Chancery in the County of Addison, upon proper proceedings for that purpose brought by a creditor and stockholder of the company, E. J. Ormsbee was duly appointed receiver of said company, accepted the appointment, duly qualified, and took possession, by order of the court, of all the assets of the company which he has thus hitherto held ; that, under an order of the court therein providing that creditors of the company who wished to become parties to the suit and share in the assets of the company should, on or before June 1, 1894, file with the receiver a statement of their several claims against the company, verified by oath, the orators presented their several claims for proof and allowance in accordance with the order, and the same were allowed

by the receiver; that on the first day of November, A. D. 1894, the receiver filed his report allowing the debts proved, and on the 11th day of February, A. D. 1898, the court ordered, adjudged and decreed that the report of the receiver be accepted and confirmed, and that the several claims therein reported for allowance, including those of the orators, be established as the indebtedness of the company, entitling the claimants to rank as creditors in the distribution of the assets of the company, the priority to be afterward determined; that the assets of the company are sufficient to pay only a small portion of the debts thus proved; that the defendants were stockholders of the company at the time it became insolvent and are all there were of such stockholders then residing in this state, and all there were in this state, to the knowledge of the orators, at the date of the bringing of this bill. The orators bring this action for themselves and all other creditors who may become parties thereto, to enforce the liability of the defendants as stockholders under that clause of section nine of the charter which reads, "And the stockholders shall be personally liable for the indebtedness of the corporation beyond their stock, to an amount equal to the par value of their stock."

The defendants, under their demurrer, contend, among other things, that this provision of the charter was repealed by No. 79, of the Laws of 1886, and therefore that the bill is without equity.

Such a repeal was not in express terms, and can only have been, if at all, by implication. By the law of 1886, all private corporations organized under special acts of the Legislature were made subject to the provisions of sections 3291, 3292, and 3293, R. L. By section nine of the charter, the corporation could not transact business until at least twenty-five thousand dollars of its capital stock had been actually paid in, and no part of the capital stock could be withdrawn so long as the corporation had any unpaid or outstanding indebtedness or liability, and for any injury or damage coming to any person or party from a violation of those provisions, the stockholders were personally liable in an action founded on that statute. By section 3291, R. L., one half

Vt.]　BARTON NATIONAL BANK, ET AL. *v.* ATKINS, ET AL.　37

of the capital stock had to be paid in before the corporation contracted debts and no part of it could be withdrawn or diverted from the proper business of the corporation, and by section 3293, R. L., if the capital stock was withdrawn and refunded to the stockholders before payment of the debts of the corporation, each of such stockholders was personally liable to creditors whose claims remained unpaid, to the amount so refunded to him, to be recovered in an action founded on that statute. By section 3291, R. L., no debts could be contracted by the corporation exceeding in amount two-thirds of the capital stock actually paid in, and, by express terms, the act of 1886 was not to be construed to prevent corporations from contracting debts beyond that amount, when specially allowed to do so by their act of incorporation. Under the charter, the stockholders were personally liable for the indebtedness of the corporation beyond their stock, to an amount equal to the par value of their stock; while under section 3292, R. L., the stockholders were individually liable to creditors to an amount equal to the amount of stock held by them respectively, for contracts and debts made by the company, until the whole amount of stock fixed by the company was paid in. It will be noticed that, by the charter, the stockholders are liable for the indebtedness to an amount equal to the par value of their stock, without limitation as to time, while under section 3292, the liability is to the creditors in the same amount, but limited to the time when the whole amount of stock is paid in. Thus it is seen that the act of 1886 was a revision of the whole subject matter of section nine of the charter and clearly was intended as a substitute therefor. The latter was repealed thereby. *Farr* v. *Brackett*, 30 Vt., 344; *State* v. *Smith*, 63 Vt., 201.

It becomes important to determine what effect this repeal had upon the rights of creditors under the provision in question.

The law making stockholders personally liable for the indebtedness of the corporation is wholly statutory, and may be contained in a special charter under which the corporation is

organized, or in the general statutory law. Such a provision is entirely for the benefit of creditors and is, in effect, a requirement that the stockholders, by availing themselves of the advantages to be derived from such an organization, shall impliedly agree to be responsible for the debts of the corporation to the extent by law provided. And when the defendants became stockholders in the Vermont Investment and Guarantee Company, they impliedly agreed to pay the indebtedness of the corporation beyond their stock, to an amount equal to the par value of their stock. This provision with the capital of the corporation was the basis of its credit. The creditors contracted with reference to it. It became a part of the law of their contracts, and constituted security for any debt contracted by the company.

To take away the rights of creditors to enforce the payment of the prior indebtedness of the corporation, under this provision by its repeal, would be an impairment of the obligation of contracts which is prohibited by the Federal Constitution. *Hathorn* v. *Calef*, 2 Wall. 10; *Ochiltree* v. *Iowa etc. Co.* 21 Wall. 249; *Shreveport* v. *Cole*, 129 U. S. 36.

The allegations in the bill show that the original capital stock of the company was fixed at fifty thousand dollars and that after its organization and before its insolvency the capital stock was increased to three hundred thousand dollars; but whether this or any increase therein was made before the repealing act of 1886 took effect, does not appear. Creditors trusted the company and the members composing it only on the basis of the capital stock and the personal liability incident thereto, at the time the contracts were made. Beyond this the personal liability clause was no part of the law of the contracts made by the company and its repeal was not within the inhibition of the constitution. Persons dealing with the company had no right to assume that other stock would be taken. "The obligation of a contract within the meaning of the constitution is a valid, subsisting obligation, not a contingent or speculative one. It was no part

of the obligation of contract that future stock should be taken."
*Ochiltree* v. *Iowa etc. Co., supra.*

The defendants contend, as a second ground of demurrer,
that they are not liable under the charter provision, unless they
were stockholders when the respective debts to the orators were
incurred.    With this we are unable to agree.

The fund subscribed by the stockholders at the time of the
formation of the company was expected to be the company's sole
working capital—a subsequent increase of stock might be voted
—and the means of satisfying its creditors. The personal liability
of the stockholders in no wise increased the working capital or
the capital stock of the corporation.    When a person became a
stockholder by subscription, this liability rested upon him as an
incident to his stock.    He had a right, in good faith, to sell and
transfer his stock and thereby relieve himself from liability as a
stockholder, and, as such incident, this liability would follow the
stock into the hands of the purchaser.    It was inseparable there-
from.    *Story* v. *Furman*, 25 N. Y. 214.

The corporation was a distinct legal entity, managing its
affairs by officers and agents.    Within the limits of the charter,
it could hold property the same as an individual.    It could
contract debts, and in no sense were they the debts of the stock-
holders.    It was the duty of the corporation to pay its debts, and
if the stockholders are individually forced to pay them, they will
be entitled to reimbursement from the corporate assets, if such
there are.    As between the corporation and the stockholders, the
former is primarily liable for its debts ; it is just and equitable
that they should be paid from its assets, in the first instance ;
and to save circuity of actions, equity requires the creditors to
resort to the primary debtor's assets first and to exhaust them
before resorting to the liability of the stockholders.    Morawetz
on Cor. sec. 883 ; *Dauchy* v. *Brown*, 24 Vt. 197 ; 2 Eq. Lead.
Cases, 273.

The debts of an insolvent corporation may have been largely
contracted at a time when other persons were stockholders and

the company solvent. It may not have become insolvent for years after the then stockholders had sold and transferred their stock to other parties who, through mismanagement perhaps, were morally responsible for its insolvency. The extreme difficulty in adjusting the rights of creditors and stockholders on the basis that the latter are not personally liable unless they were such stockholders when the debts were contracted, and the inequity which might result from such adjustment, are sufficient reasons why, in the absence of statutory provisions governing it, the law should be construed to make the stockholders at the time of the insolvency of the corporation liable, without regard to who were stockholders when the debts were contracted. Such construction is consistent with the legal effect of a sale and transfer of stock. Mr. Morawetz says : " The right given by law to transfer shares in a corporation is held to include, by implication, a right to effect a complete novation of the contract of the holder with the other shareholders. The transferor is discharged from all liability to contribute to the company's capital, either for the benefit of the corporation, or for the benefit of creditors, and the transferee is rendered liable in his place. There is no reason why the right of transfer should not likewise be held to include a right to effect a novation of a special individual liability imposed upon the shareholders for the security of creditors alone." Morawetz on Cor. sec. 888.

Nor is the case of *Windham Provident Institution* v. *Sprague*, 43 Vt. 502, relied upon by the defendants in support of their contention in this regard, in conflict with the construction here given. In that case the plaintiff sought to recover its debt of the defendants under a section of the charter of the corporation in which they were directors and stockholders, which provided that the company should not at any time contract debts exceeding three-fourths the amount of its capital stock paid in ; and if such indebtedness should exceed that amount, the directors and stockholders should be personally holden to the creditors of the company. The creation of this additional liability was held

to have been intended as a check upon the directors and stockholders in the contraction of debts, and to have been imposed as a penalty for the infraction of that provision in the charter, and that to visit that penalty upon others than those who caused the infraction would be unjust and unintended. There is a well recognized distinction between a liability under such a provision and a liability under a provision like the one here in question. Morawetz on Cor. secs. 877, 907.

The third ground of demurrer is that the action, if any, should be at law. The liability of the stockholders is not to the creditors, but for the indebtedness of the corporation, to an amount equal to the par value of their stock. In proportion to their stock, they must contribute to a common fund to be apportioned among the creditors entitled thereto, according to the relative amount of their debts proved. In the enforcement of this liability and the apportionment of the fund, there are equities among the creditors, among the stockholders, and between the creditors and stockholders, to be adjusted. A complete, convenient, and comprehensive remedy can be had only in a court of equity where the rights of all parties can be considered and relief requisite to meet the ends of justice granted in a single action. *Crown* v. *Brainard*, 57 Vt. 625; *Pollard* v. *Bailey*, 20 Wall. 520; *Terry* v. *Little*, 11 Otto 216; *German National Bank* v. *Farmers' and Merchants' Bank*, 74 N. W. Rep'r 1086.

Were it possible to determine the questions involved in a court of law, the interference of a court of equity would be justified upon the ground that a comprehensive decree covering the whole controversy can there be made and thus avoid a multiplicity of suits that would certainly arise. *Smyth* v. *Ames*, 169 U. S. 466; 1 Pom. Eq. Jur. secs. 268, 269.

But, as their fourth ground of demurrer, defendants contend that if a suit in equity can be maintained, it should be by the receiver appointed and in the discharge of his duties before the commencement of this action. With this contention we

quite agree.   As before stated, the provisions for personal liability with the capital of the corporation was the basis of its credit. The creditors had a right to understand that, although the debts contracted were the debts of the corporation and that, in their enforcement, the remedy against it and its primary assets must first be exhausted, if such assets proved insufficient, they had, as security for the deficiency, this liability of the stockholders. The stockholders knew the law and voluntarily assumed that responsibility, and while it was not enforceable by the corporation, it is a secondary asset for that purpose and constitutes a trust fund to be resorted to by the receiver in the marshalling of assets, if necessary for the full satisfaction of the indebtedness for which it is holden.   The receiver represents the corporation, the stockholders, and the creditors; and if the primary assets prove insufficient for the payment of the corporate indebtedness, it is his right and duty, under the direction of the court, to enforce this liability in the same proceeding for the benefit of those creditors entitled to the trust fund to be derived therefrom.   *Post* v. *Toledo, etc., R. R. Co.* 144 Mass. 341 (59 Am. Rep. 86); *Cushing* v. *Perot,* 175 Pa. 66 (34 L. R. A. 737);   *McKusick* v. *Seymour etc. Co.,* 50 N. W. Rep'r. (Minn.) 1114; *Farmer's Loan & Trust Co.* v. *Funk,* 68 N. W. Rep'r. (Neb.) 520; *Pickering* v. *Hastings,* 76 N. W. Rep'r. (Neb.) 587; *Wilson* v. *Book,* 43 Pac. Rep'r. 939; Thompson on Cor. sec. 3368.

Of the stockholders at the time of the insolvency of the corporation, some have since died, letters of administration were taken upon their estates, commissioners were appointed to receive, examine, and adjust the claims and demands against the estates and in offset thereto, the times for presenting claims have expired, and claims which, by law, should have been thus presented for allowance but were not, are barred.   Sec. 2436, V. S.   But it is said by the orators that the nature of the liability in question is such that commissioners have no jurisdiction over claims for its enforcement and, therefore, they are not barred by a failure thus to present them.

Notwithstanding the liability is contractual, the right of recovery and the extent thereof can be determined only in a court of equity. For the holding that such claims are purely of an equitable character, commissioners without jurisdiction, and the claims not barred by not presenting them, the case of *Spalding* v. *Estate of Warner*, 52 Vt. 29, is full authority. The rule is there laid down that " When resort to chancery is necessary, to ascertain and establish the right of recovery or the extent of that right, the claim is of a purely equitable character, and commissioners have no jurisdiction over it, and it is not barred if not presented to them for adjustment."

Creditors have a priority of right to satisfaction, and if the estates of such deceased stockholders have been received by heirs-at-law or legatees, the assets may be followed in equity, into whosesoever hands they come. *Newman* v. *Barton*, 2 Vern. 205; *Noel* v. *Robinson*, 1 Vern. 90; 1 Story Eq. Jur. 92. And as such heirs and legatees have an interest in the assets thus sought to be refunded, they are necessary parties to the bill. Mitford's & Tyler's Pl. & Pr. in Eq. 36.

But it is urged that Farrington and Thayer as assignees of the insolvent estate of G. & F. E. Briggs, under appointment of the Court of Insolvency, were improperly made parties and that the assets of the insolvent estate can be distributed only in accordance with the insolvency laws, under the direction of the court of insolvency; that it having seized the assets for distribution to creditors, no other court could subsequently interfere therewith, and reference has been made to many authorities in support of this position.

Without expressing any opinion as to the general law applicable thereto, we think the provisions of the insolvency law, and the decisions of this court construing the same, are controlling. The liability of the partnership as stockholder, for the indebtedness of the Vermont Investment & Guarantee Company, could not be proved against the insolvent firm in the ordinary way of proving debts and claims in the insolvency court. The fact that

the partnership is in insolvency and that its assets must be distributed among its creditors according to the insolvency laws, renders it no less necessary that the right of recovery and the extent thereof against it as a stockholder, under the provision in question, should be established in a court of equity. The same equities are to be adjusted as would have to be, if the firm was not in insolvency. The amount due from it by reason of this liability is in dispute, and a suit, by leave of the court of insolvency, may be brought and proceed to judgment, during the pendency of the insolvency proceedings, for the purpose of ascertaining that amount; and when the amount is thus ascertained, it may be proved as a debt in the insolvency proceedings. Secs. 2071, 2074, V. S.; *Patterson* v. *Smith*, 66 Vt. 633; *Thomas* v. *Carter*, 63 Vt. 609. The claim will then stand like other debts and claims proved, and the distribution of the estate of the partnership and the separate estate of the surviving partner among the creditors will be governed by the provision of sec. 2164, V. S.

In *Thomas* v. *Carter* it was expressly held that the bringing of a suit was not prohibited, and that the protection to the debtor was by application to the court for a stay of the suit. When such application is made, it is within the province of the court to allow the suit to proceed to judgment to ascertain the amount due, if it is in dispute. The assignees were properly made parties.

F. E. Briggs, one of the members of the partnership, died after the filing of the petition against it in insolvency, and thereby the proceedings against his separate estate were discontinued, leaving it to be settled like other estates of deceased persons. Sec. 2170 V. S.; *Bartlett* v. *Walker*, 65 Vt. 594. And, although the claim under the charter provision, against the partnership, would be joint as to the members, it is provable against his estate the same as it would be, were the liability joint and several. Sec. 2440 V. S. With the claim thus proved, independent of other considerations, it would stand ratably with other debts against the estate. But, under the insolvency law (sec. 2164, V. S.), and also

in equity ( *Washburn* v. *Bank of Bellows Falls*, 19 Vt. 278 ; *Bardwell* v. *Perry*, 19 Vt. 292), partnership effects must be applied in satisfaction of partnership debts and liabilities, in preference to debts due creditors of the individual partners. This gives the partnership creditors a prior lien upon the partnership assets and an equal lien upon the separate assets of the private estate, while the private creditors have an equal lien only upon the latter. Creditors who come into equity for the enforcement of their claim, must do equity. They must first exhaust the partnership effects, and for any balance remaining unpaid thereafter, they will stand on an equal footing with the private creditors of F. E. Brigg's estate. *Bardwell* v. *Perry, supra ; Washburn* v. *Bank of Bellows Falls, supra ;* 1 Story Eq. Jur. (9th Ed.) sec. 645a.

Defendants further contend that debenture holders are not unsecured creditors, and are misjoined.

It is not necessary to consider what the effect would be did it appear that they were secured. The name does not necessarily imply a secured debt or claim. A "debenture" is defined in the Century Dictionary as, "A writing acknowledging a debt; specifically, an instrument, generally under seal, for the repayment of money lent; usually if not exclusively used of obligations of corporations or large moneyed copartnerships, issued in a form convenient to be bought and sold as investments. Sometimes a specific fund or property is pledged by the debentures, in which case they are usually termed mortgage debentures."

It would seem from this definition, that to have a specific fund or property as security for the payment is an exception to the rule, rather than the rule itself. No misjoinder of parties in this regard is disclosed by the allegations in the bill.

*Decree dismissing the bill affirmed with costs to the defendants in this court, and cause remanded.*