INTERNATIONAL PAPER COMPANY ET ALS. *v.* BELLOWS FALLS
CANAL COMPANY.

Special Term at Rutland, November, 1915.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, and TAYLOR, JJ.

Opinion filed May 1, 1917.

*Water Rights—Interest of Lessees—Equity—Jurisdiction—
Apportionment—Defective Statement of Cause of Action—
Construction of Conveyance of Land—Law of State Where
Land is Situated—Injunction to Restrain Litigation in An-
other State.*

The several lessees of parts of water power from the dam of a common
lessor have, by virtue of their respective water rights and priv-
ileges, a common interest in the use of the water power and in the
reservoir rights wherever situated.

A demurrer to a bill in equity confesses to be true all matters which
are well pleaded therein.

A reservoir, consisting of a pond and canal, which is an essential
feature of several leased and granted water powers and so closely
connected with certain pieces of land conveyed with the water
powers, in their intended use, as to be necessary to their beneficial
enjoyment, is an incident to the principal things conveyed and
passes under the grants and leases in the proportions of the
several water rights therein specified.

A court of equity has jurisdiction to apportion between the lessor and
several lessees of a water power the taxes assessed upon the whole
and constituting a common charge upon the property, all the par-
ties in interest having been joined in a suit brought for the pur-
pose.

Where a subject-matter is within the original jurisdiction of equity,
such jurisdiction is of a fixed and permanent character, and, being
once vested legitimately in the court, it must remain there until
the legislature shall abolish or limit it.

A defective statement of a cause of action in a bill in equity does not
destroy the jurisdiction of the court, because jurisdiction of a par-
ticular matter does not mean simple jurisdiction of the particular
case, but jurisdiction of the class of cases to which the particular
case belongs.

The law of the State in which land is situated must be looked to for the rules which govern its descent, alienation and transfer, and for the effect and construction of a conveyance of it.

The several lessees under written conveyances of a dam, canal and water privilege situated in Vermont, a part of the pondage incident to which is situated in New Hampshire, have a clear equity to have the effect and construction of the conveyances determined according to the laws of Vermont, and when suit has been instituted by them against the lessor in a Vermont court for this purpose, subsequent proceedings brought and threatened to be brought for the same purpose against them by the lessor in the courts of New Hampshire are contrary to equity and a good conscience, and the lessees are in equity entitled to an injunction restraining the lessor from instituting or prosecuting such suits.

APPEAL IN CHANCERY. Heard on demurrer to the amended bill of complaint at the September Term, 1915, Windham County, *Fish,* Chancellor. *Pro forma* decree, overruling the demurrer and adjudging the amended bill sufficient, and for the plaintiffs in accordance with the prayer of the amended bill, with costs. Defendant appealed. The opinion states the case.

See the prior report of this case, 88 Vt. 93, 90 Atl. 943.

*Clark C. Fitts, James W. Remick* and *Hermon E. Eddy* for the plaintiff.

The determination of the rights and obligations of the parties growing out of the contracts in question should be in the Vermont Courts. The court of chancery has jurisdiction to restrain the defendant from proceeding to litigate the question in New Hampshire. *Hazen et al.* v. *Lyndonville Bank,* 70 Vt. 543; *Vermont & Canada R. R. Co.* v. *Vermont Central R. R. Co. et al.,* 46 Vt. 792; *Bank* v. *Railroad Co.,* 28 Vt. 470; *Cole* v. *Cunningham,* 133 U. S. 107; Story Eq. Jur. Secs. 899, 900; *Phelps* v. *McDonald,* 99 U. S. 298; *Great Falls Mfg. Co.* v. *Worcester,* 23 N. H. 462; *Kidder* v. *Tufts,* 48 N. H. 121, *Moore* v. *Maryland Casualty Co. et al.,* 74 N. H. 47, 64 Atl. 1099; 22 Cyc. 813, 814; 2 High on Injunctions, vol. 1. ss. 103-7; *International Paper Co.* v. *Bellows Falls Canal Co.,* 88 Vt. 93; *Massie* v. *Watts,* 6 Cranch. 148; *Cole* v. *Cunningham,* 133 U. S. 107; *Smith* v. *Bank,* 69 N. H. 254, 45 Atl. 1082; *Eastman* v. *Bank,* 58 N. H. 421; *Carpenter* v. *Fisher,* 68 N. H. 486, 38 Atl. 211.

*Stickney, Sargent & Skeels* and *Streeter, Demond, Woodworth & Sulloway* for defendant.

It is well settled that a citizen of a state cannot properly be enjoined by its courts from litigating in another jurisdiction unless it is shown that the prosecution of such foreign litigation would be inequitable, which is not the case here. *Bank of Bellows Falls* v. *Rutland & Burlington R. Co.,* 28 Vt. 470; *Vermont & Canada R. Co.* v. *Vermont Central R. Co.,* 46 Vt. 792; *Hazen* v. *Lyndonville Bank,* 70 Vt. 543; *Dehon* v. *Foster,* 4 Allen 550; *Cable* v. *Life Ins. Co.,* 191 U. S. 288, 309; *Carson* v. *Dunham,* 149 Mass. 52; *Savage* v. *Allen,* 54 N. Y. 458; *Guggenheim* v. *Wahl,* 203 N. Y. 390; *Mead* v. *Merritt,* 2 Paige (N. Y.) 402; *Burgess* v. *Smith,* 2 Barb. Ch. (N. Y.) 276; *Edgell* v. *Clarke,* 19 App. Div. (N. Y.) 199; *Kittle* v. *Kittle,* 8 Daly (N. Y.) 72; *Mariposa Co.* v. *Garrison,* 26 How. Prac. (N. Y.) 448; *Allison* v. *Eagle Insurance Co.,* 128 N. Y. Supp. 817; *Miller* v. *Myers,* 135 N. Y. Supp. 73; *Griffith* v. *Dodgson,* 103 App. Div. 543; *Bigelow* v. *Old Dominion Copper Co.,* 74 N. J. Eq. 457; *Miller* v. *Gittings,* 85 Md. 601; *Ambursen Construction Co.* v. *Contracting Co.,* 140 Ga. 1, (47 L. R. A., N. S. 684); *Thorndike* v. *Thorndike,* 142 Ill. 450 (21 L. R. A. 71); *Royal League* v. *Kavanaugh,* 134 Ill. App. 75, 233 Ill. App. 175; *Cole* v. *Young,* 24 Kan. 435; *Freick* v. *Hinkly,* 122 Minn. 24; *Jones* v. *Hughes,* 137 N. W. (Ia.) 1023; *Wade* v. *Crump,* 173 S. W. (Tex. Civ. App.) 538; *Wyeth Hardware Co.* v. *Lang,* 54 Mo. App. 147.

The contracts in question are not Vermont contracts for any purpose material to this controversy. The only purpose for which there is occasion to examine them is to determine their effect as transferring property interests in New Hampshire real estate and thus of affecting New Hampshire taxation of such real estate. They should be therefore construed by the law of New Hampshire. Minor, Conflict of Laws, p. 28; 9 Cyc. 680; *Baxter* v. *Willey,* 9 Vt. 276; *Tillotson* v. *Richardson,* 60 Vt. 94; *Smith* v. *Ingram,* 130 N. C. 100, 104, 61 L. R. A. 878; *Wheeler* v. *Walker,* 64 Ala. 560; *Robards* v. *Marley,* 80 Ind. 185; *Riley* v. *Burroughs,* 41 Neb. 296.

WATSON, J. When this case was here before, the demurrer to the bill was sustained, the bill adjudged insufficient, and the cause remanded with mandate that the bill be dismissed unless

further proceedings in the court of chancery be petitioned for and permitted conformably to section 1317 of the Public Statutes. 88 Vt. 93, 90 Atl. 943. On motion in the court of chancery, the plaintiffs were granted leave to amend their bill, and on July 19, 1915, the amended bill ''in addition to and amendment of the'' original bill, was filed. The defendant filed its answer and, as a part thereof, demurred to the amended bill, specifying the same grounds of demurrer as were specified in the demurrer to the original bill, together with three additional grounds. The demurrer was overruled *pro forma,* the amended bill adjudged sufficient, and decree entered *pro forma* for the plaintiffs in accordance with the prayer. The case is here on defendant's appeal.

Respecting the parties, the amended bill shows that the Moore & Thompson Paper Company, the Robertson Paper Company, the Wyman Flint & Sons Company, and the Rockingham Paper Company, are corporations organized and existing under the laws of the State of Vermont; that the International Paper Company is a corporation organized and existing under the laws of the State of New York; that all of said corporations have places of business at Rockingham, in the State of Vermont; that J. T. Moore & Son is a partnership consisting of John T. Moore and Carroll A. Moore, both residents of said Rockingham; that Olive Adams, a plaintiff in the original bill, who has deceased, was at the time of her decease and at the time of the bringing of that bill, a resident of said Rockingham; that the plaintiff Frank Adams is the son of Olive Adams, and administrator of her estate, and is a resident of said Rockingham; that said Abbie Howard and Daniel D. Howard are residents of the State of Pennsylvania; that the business of the Olive Adams estate is being carried on at said Rockingham; that the defendant Bellows Falls Canal Company is a corporation organized under the laws of the State of Vermont, and has an office and is doing business at said Rockingham; and that all of said persons and corporations are now and have been ever since the bringing of the original bill, within the jurisdiction of the courts of the State of Vermont.

The amended bill further shows, as is more particularly set forth in the original bill, and as stated in the former opinion, that the defendant (hereinafter generally designated as the Canal Company) is the owner of a water power consisting of a

23

dam across the Connecticut river from the town of Rockingham in the State of Vermont, to the town of Walpole in the State of New Hampshire, and rights of flowage connected therewith in each state; that defendant also owns in fee, connected with the water power mentioned, a certain canal in said town of Rockingham, by means of which canal and certain flumes, and gates, it furnishes water power to each of the plaintiffs, under the contracts specifically set forth in the original bill; that the tax assessed upon said water power, dam, canal, reservoir, and flowage rights by said towns of Rockingham and Walpole, has been and is assessed to and against the defendant; that said assessment to the defendant is rightful, proper, and equitable, as more particularly set forth in the original bill.

It also appears from the bill as amended that on the 28th day of February, 1832, the Canal Company was also the owner in fee of land situated in said town of Rockingham and adjacent to the canal, separate parcels of which it conveyed, on that day or later, by deed or lease to the plaintiffs respectively, or their assignors, together with the right to draw or take water from the canal to furnish power at their respective mills and plants on the parcels of land so conveyed, copies of which deeds and leases, set out *in haec verba,* are attached to the original bill and made a part thereof, special reference being made to the "proposals" (set out in the same manner) forming a part of certain of the grants and leases, as indicated therein—particularly to paragraph V.

The deeds, leases, and contracts from or with the Canal Company, under which the plaintiffs hold their respective interests, are severally pointed out in the former opinion, and need rarely to be noticed here with much particularity. In this connection, however, it should be stated, in passing, that Olive Adams having died, all the right, title, and interest under the deed to John Carey hereinafter mentioned, now stand in the estate of Olive Adams, and in her real representatives, now parties to the suit.

By paragraph I of the "Proposals": "The Bellows Falls Canal Company propose to sell and lease their Mill Powers situated on the Connecticut River, in that part of the town of Rockingham called Bellows Falls, on the following terms and conditions, to be varied as the parties may agree in the deed or lease. For the price that may be agreed upon, they will grant

or lease a parcel of land to be described in the deed or lease with one or more Mill Powers, or fractional parts of a Mill Power, of the quantity of water described below, and with the covenants contained in the annexed deed or lease.'' By paragraph II: ''Each Mill Power is declared to be the right to draw from the nearest canal or water course of the grantors or lessors, and through the land to be granted or leased, so much water as shall give a power equal to thirty cubic feet of water per second, when the head and fall is twenty-five feet;........'' By paragraph III: ''The grantors or lessors are to construct and forever keep in good repair the principal canals,......They are also to forever maintain the dam in the Connecticut river, at the head of said principal canals, of such height as may be necessary and as they may lawfully do in order to turn the water into the canals.'' By paragraph IV: ''The flumes and raceways of every mill are to be made, maintained, and kept in repair by the respective grantees or lessees,........'' By paragraph V: ''......It is therefore declared that each Mill Power shall forever be subject to a perpetual annual rent,......which rent is to be paid in semi-annual payments forever, free from all charges or deduction whatever for taxes or assessments of every description which may be assessed or levied upon any granted or leased premises after the making of the deed or lease, all of which are assumed by the grantees or lessees.''

When the ''proposals'' were adopted by the Canal Company does not appear. But by its deed dated February 28, 1832, the company conveyed to John Carey, in fee, a certain piece or parcel of land situated in the village of Bellows Falls, in the town of Rockingham, ''and whereon the stone grist mill in said village'' then stood (describing the land thus conveyed by metes and bounds), ''and also a privilege equal in point of time to that of the owners of any water privileges on the Bellows Falls Canal of taking at his or their own expense by means of a trunk at the bottom of said canal as at present fixed and not exceeding in diameter three feet square, sufficient water from the said canal to carry three run of stones, a smut mill and a corn cracker with bolts and all other machinery which are or may be necessary and proper for a grist and flouring mill with such number of stones as aforesaid when applied upon the principles of water saving machinery as at present constructed.''

This deed contains a covenant for quiet enjoyment of ''the

said water privilege,''......"and that said company and their successors will not make or allow to be made any alteration in said canal or works, or hereafter sell or let or occupy for themselves any right of water whereby the herein granted privilege in respect of sufficient quantity of water for the purposes aforesaid shall in any wise be injured or impaired,......'' It is also stated under the *habendum* that the grantor is "well seized of the premises in fee simple," and has "a good right and lawful authority to bargain and sell the same with the appurtenances and privileges in manner and form above written," etc. The extent of the water privilege granted to Carey is not more definitely shown, nor does it appear to have been more definitely fixed, than in and by the deed itself. There was no reservation of rent connected with this grant; nor do the "proposals" enter into, or form any part of, the contract of conveyance.

It further appears that the "proposals" are annexed to and are a part of the grants and leases from the Canal Company to all the other plaintiffs, respectively, or their assignors; that each of these grants and leases is of a parcel of land described therein, "together with the said (giving number of) mill powers (as described in the annexed proposals and to be used as therein set forth) with all the privileges and appurtenances to the same belonging,......'' and that there is reserved a specified annual rent for each mill power so granted or leased, and by each lease a yearly rental on the land itself. The International Paper Company, by subsequent contract with the Canal Company, acquired the further right to use all the surplus water, paying thereunder a gross sum yearly for its entire water power rental. The several grants are in fee; the several leases, descendible and assignable, are for the term of ninety-nine years; and each grant, except the one to John Carey, and each lease, is made "subject to the agreements, terms, conditions and all other matters and things in the said annexed proposals set forth as obligatory upon the grantees" or lessees as the case may be.

It is unnecessary for present purposes to go more into detail respecting the quantity of water, comparatively or otherwise, that each of the plaintiffs has the right to draw or take from the canal and use; for certain it is, that by virtue of their respective water rights and privileges, they all, including those holding under the deed to Carey, have a common interest in the use of the water power, and as we shall see presently they have common

interests in the reservoir rights wherever situated. *Sanborn* v. *Braley,* 47 Vt. 170; *Miller* v. *Clary,* 210 N. Y. 127, 103 N. E. 1114, Ann. Cas. 1915 B, 872.

The allegations in the original bill show that for some years then last past, and at the time the bill was filed, the dam and water power property owned by the defendant, had been and was then taxed to the defendant in the town of Walpole, New Hampshire, the amount of tax varying from year to year but approximating in the year 1911, $5,000; that the defendant claims that it is entitled to a lien upon the granted premises for the taxes so assessed, with a right of action to recover the same from the grantees, and has notified the plaintiffs, and each of them, that defendant will look to them to be reimbursed for any and all payments which it has made or will make to said town of Walpole on account of taxes laid and assessed therein on the dam and the water power property, claiming, among other things, that paragraph V of the "Proposals" gives defendant such lien and a legal right to enforce against the plaintiffs, claims and demands for taxes on the dam, etc.; that said paragraph V merely provides, and has ever been understood by the parties to provide, that the rent therein mentioned shall be paid by the grantees without deduction for any taxes or assessments which the grantee may be required to pay upon the premises granted or leased to it, and does not include, and was never intended to include, any taxes assessed against the grantor for or in connection with its water power or otherwise, or to give the grantor any right to collect any such taxes from the grantee; that the term "granted or leased premises," as used in said paragraph V, includes, and has ever been understood by the parties to include, simply and only the land granted or leased to them in the said town of Rockingham, and any fixtures or improvements thereon, but does not include, and has never been understood to include, the dam, nor the place where the water is stored before being diverted into the canal, nor the water either in the dam or in the canal, nor the property or rights other than as stated above; that at the time said grants and leases were respectively made, and ever since, up to the year 1911, the grants and leases were regarded and construed by each and all the parties thereto, as referring only to taxes payable and paid by the grantees and lessees, and as including and covering property and rights in Rockingham, only, owned exclusively by them respectively, and that the Canal Com-

pany was bound and obligated to pay all taxes on its property
in the town of Walpole, without recourse to or liability by the
grantees or lessees, or any of them, to pay said taxes or any part
thereof; and that the Canal Company for very many years uni-
formly paid such taxes accordingly, without any such recourse,
and without making any claim against the plaintiffs therefor;
and that such grants and leases, and the consideration and rental
therefor, were established, made, and agreed upon, on such
understanding and that until the year 1911, that company never
claimed nor sought to maintain that these plaintiffs, or any of
them, were holden or liable under the grants and leases, or in
any other way, for any portion of the taxes assessed in the town
of Walpole.

In addition to the foregoing facts alleged in the original
bill, the amended bill shows, that after the filing of the original
bill, and on the 12th day of November, 1912, the Canal Company
filed in the equity side of the superior court for the County of
Cheshire in the State of New Hampshire, its bill of complaint or
petition for abatement of taxes, setting forth the title to the
water powers, the contract relations between these plaintiffs and
the Canal Company, the appraisal of the property in the town of
Walpole, the amount of the taxes which for that year was $19,140,
and alleging that most of said taxes represented property of the
grantees and lessees of that company, who are the plaintiffs here,
and that the same should be separately assessed to and paid by
these plaintiffs, and praying that said superior court make the
selectmen of the town of Walpole parties and co-defendants in
said action, and quash said assessment and tax, and issue to said
selectmen its writ of *mandamus,* commanding them to reassess
said real estate for that year, and in so doing to appraise separ-
ately and tax to the Canal Company and to said several grantees
and lessees their respective interests in said real estate, in accord-
ance with such directions as should be laid down ''by said court
or by the Supreme Court;'' also praying for order of notice to
each of said grantees and lessees, directing them to appear and
show cause why the interests owned by them should not be
separately appraised and taxed to them respectively, etc.; that
on the same day, an order of notice issued from said superior
court, directing notice to each of these plaintiffs, and ordering the
town of Walpole, the selectmen thereof, and each of these plain-
tiffs, to file their answers, etc.; that thereupon these plaintiffs

filed their supplemental bill in the case at bar, securing thereon an injunction against the Canal Company restraining it from proceeding with said New Hampshire suit; that said proceeding in the New Hampshire court was subsequently dismissed upon stipulation by and between the Canal Company, the town of Walpole, and these plaintiffs, said stipulation being based upon agreement and understanding entered into by and between said parties, whereby the appraised value of said property was reduced by said town of Walpole from $1,100,000 to $600,000, and it was then and there agreed and understood by all of these parties that they should await the determination of the bill in this cause then pending in the Vermont courts, as to the way in which the taxes on said property should be assessed, who should pay the taxes, and in case liability therefor should be established against the plaintiffs, in what proportions they should be assessed to the Canal Company, and to the plaintiffs, "and that it was understood that these questions would be litigated in Vermont."

The amended bill further alleges that the Canal Company is bound in equity and good conscience by reason of the foregoing, and by the opinion of the Supreme Court in this cause, to seek or submit to a determination of the aforesaid question as to the ownership and title and liability to tax, by the Vermont courts, either by proper proceedings in this suit or by some other suit or proceedings in the courts of that state, and to refrain from further proceedings in the New Hampshire court; but that, not regarding the aforesaid agreement and understanding, etc., the Canal Company has filed in the said superior court, in the State of New Hampshire, a similar petition (which is set out *in haec verba,* in the amended bill) against the town of Walpole, the selectmen thereof, and the plaintiffs in the suit at bar, for the abatement of taxes assessed against the Canal Company, in said town of Walpole, for the year 1914, and for other relief hereinafter mentioned. The Canal Company undertook to specify in its said petition, according to its claim, the property interests and liabilities of the respective grantees and lessees, under the grants, leases, and contracts, executed by the Canal Company, stating, among other things: "That, by virtue of a clause which forms a part of all the above mentioned conveyances, leases and indentures, except the one under which said Olive Adams claims, said grantees and lessees assumed and agreed to pay all taxes

assessed on the interests acquired by them respectively in said real estate under said instruments."

The petition contains no allegation that the appraisal of the property at $600,000 (the same sum agreed upon as the appraisal of 1912) is excessive; but it does allege that said valuation "is grossly excessive, disproportionate and unjust if treated as a valuation of your petitioner's interest in said real estate, exclusive of the interest therein owned by and lawfully taxable to said grantees and lessees."

The prayer of the petition is, in part, that the tax may be abated in its entirety, or that so far as the same is assessed against and concerns the petitioner, may be abated to such an extent as will reduce the same to an amount representing a tax upon a just and proportionate valuation of the petitioner's interest in said real estate, exclusive of the interests therein owned by said grantees and lessees. The other parts of the prayer look only to the same end, namely, to the construction of the grants, leases, and contracts, by virtue of which the plaintiffs respectively hold parcels of land, and water rights connected therewith, under the Canal Company as grantor or lessor, which is exactly the same question as is involved in the suit at bar.

It is further alleged in the amended bill that it is the function of the courts of Vermont to determine upon whom the burden of the taxes assessed upon said parties shall ultimately fall, and to restrain the defendant from litigating said matter in the courts of the State of New Hampshire; that a considerable proportion of the properties of the defendant which are connected with and a part of its dam, canal, and pondage, are located within the State of Vermont, and such portions as are there located, including the canal, are taxed in Vermont, so that the courts of this State have jurisdiction in this case over all the parties *in personam,* over part of the property, and over the payment of of taxes which is ultimately involved in the issues between the parties, as set forth in the amended bill; that unless enjoined, the Canal Company will undertake to proceed with said action in the New Hampshire court, and will therein undertake to secure some definite judgment, decree, or determination of the questions and issues above stated, as against the plaintiffs and each of them, and that the plaintiffs and each of them will be compelled either to suffer default in the New Hampshire case, by not appearing therein, and taking and abiding such consequences as

may come from such default, or appear and answer and litigate said questions and issues in the courts of that state, thereby depriving the plaintiffs of their legal rights and privilege of having such issues litigated in the courts of the State of Vermont, which have full jurisdiction thereof; that the Canal Company and its solicitors have threatened to bring divers and numerous suits at law and proceedings against the plaintiffs and each of them in the courts of the State of New Hampshire for the purpose of endeavoring to procure there a judgment or decree that the plaintiffs are jointly and severally liable for the taxes assessed by the town of Walpole, on the dam and water power property there situated, and for the purpose of endeavoring to collect the taxes heretofore paid by or assessed against the Canal Company, upon the said dam and property, not included in the grants and leases to the plaintiffs, thereby establishing some sort of a lien or right or encumbrance upon the premises granted and leased to the plaintiffs; and that such suit or proceedings in the State of New Hampshire would operate to deprive the courts of this State of their rightful jurisdiction in the premises, and would compel the plaintiffs, and each of them, to go into a foreign jurisdiction to litigate questions peculiarly belonging to this jurisdiction and which they have the right to have litigated here; and that, in short, it is the intention of the Canal Company to litigate said matters in the courts of New Hampshire, and therein have determined and settled as between that company and the plaintiffs together and separately, and between the plaintiffs themselves, the question of ownership of the taxable property in question there situated, whereby the courts of Vermont will be impotent to exercise their lawful authority and jurisdiction in the premises, to determine the respective rights of the parties hereto, by virtue of the deeds and leases from the Canal Company, under which the plaintiffs are severally holding their property rights here in question. A temporary injunction was prayed for, and was issued, against that company, restraining it from proceeding with its said petition in the New Hampshire court, pending the determination of the issues raised by the bill as amended in the suit at bar, or until further order of court; also praying for a determination and adjustment of the issues and questions raised as to the title and ownership of rights and premises in question, and as to who is liable to pay the taxes

thereon under the provisions of the deeds, leases, and contracts set forth in the original bill; and for general relief.

It is hardly necessary to state that the demurrer confesses all matters which are well pleaded in the bill as amended, to be true, and we must consider them accordingly.

From what we have already said, it is seen that all the different parcels of land held by the plaintiffs under the grants and leases from the Canal Company are situated in this State, as is also the canal from which the plaintiffs severally have the right to draw water for the purpose of power on, and in connection with the use of, the lands so held. Though the place of the divisional line between the State of Vermont and the State of New Hampshire is in dispute, and for the determination of the Supreme Court of the United States in a suit now pending, yet the amended bill alleges and the demurrer admits, that a considerable proportion of the properties of the defendant which are connected with and a part of its dam, canal, and pondage, is situated within the State of Vermont. By the provisions of the grants and leases in question, it should seem that the reservoir, composed of the pond and the canal, is an essential feature of the water power in which the plaintiffs severally have rights and privileges, and is so closely connected with the several pieces of land in their intended use, as to be necessary to their beneficial enjoyment; and that therefore it is an incident to the principal things conveyed, which passed under the grants and leases, in the proportions of the several water rights therein specified. *Perrin* v. *Garfield*, 37 Vt. 304.

That the court of chancery has jurisdiction of the subject-matter, as shown by the original bill, was established when the case was here before; for otherwise, in remanding the cause, the mandate would have been peremptory to dismiss the bill for want of jurisdiction of the subject-matter. *Holt* v. *Daniels*, 61 Vt. 89, 17 Atl. 786; *Deerfield Lumber Co.* v. *Lyman*, 89 Vt. 201, 94 Atl. 837. And it was then also expressly held that:

"The Vermont courts may properly deal with the question, Upon whom shall the burden of taxes assessed on the property in question wherever situated ultimately fall?"

That all the parties interested in this question are before the court as parties to this case, is shown by the allegations of the amended bill. As part of the new matter alleged in the amended bill, it appears that the appraisal of that part of the property

situated in the town of Walpole, New Hampshire, as a basis of taxation for the year 1912, is fixed at $600,000. The tax assessed thereon for that year stands as undisputed.

The property conveyed by the Canal Company to Carey in fee, is to be taxed to the owner, like any other property of that character. Whether by force of this grant and the covenants and provisions connected therewith, such owner, as between him and the Canal Company, is in equity bound to pay a proportionate part of the taxes upon said dam, reservoir, and rights of flowage, wherever lawfully assessed, and whether by force of the clause of paragraph V of the "proposals," the other plaintiffs, as between them and the Canal Company, are in equity severally bound to pay proportionate parts of all such taxes, constitute the primary and controlling question involved in this case. If under the aforementioned grants and leases, by operation of law or by reason of assumed liability, the grantees and lessees, and their assigns, are responsible for all such taxes, wherever lawfully assessed, then the taxes assessed against the Canal Company in said town of Walpole, in and for the year 1912, on so much of said property as is there situated, on the appraised valuation of $600,000, as alleged in the amended bill, constitute a common charge which, as between the Canal Company and the plaintiffs, the latter are in equity severally obligated to pay in proportion to their respective interests in the subject-matter to which the common charge attaches. If such right of the defendant be established, then involved therein is the inseparable element of the equities between the plaintiffs themselves, without the adjustment of which their several liabilities cannot, in justice to all concerned, be determined. In Adams's Equity, at page *267, it is said: "The equity for adjusting liabilities under a common charge arises where a charge or claim, affecting several persons, is or may be enforced in a manner, not unjust in the person enforcing it, but unjust or irregular with regard to their liabilities *inter se.*" In *Mandeville* v. *Riggs*, 2 Pet. 482, 7 L. ed. 493, the Supreme Court of the United States, speaking through Mr. Justice Story, said: "It is a matter of justice, as well as convenience, that all the parties who are ultimately liable to contribution should, when practicable, be brought before the court, so that the equities between them may be adjusted as well as the right of the plaintiff." In such cases of liability for a common charge, says the same learned Justice, equit-

able jurisdiction is exercised on the ground, "that the subject-matter is, *per se,* within the scope of equitable jurisdiction." 1 Story, Eq. Jur. § 441. Again he says (§ 479) : "But there are many difficulties in proceeding in cases where apportionment or contribution is allowed at the common law; for, where the parties are numerous, as each is liable to contribute only for his portion, separate actions and verdicts may become necessary against each. And thus a multiplicity of suits may take place; and no judgment in one suit will be conclusive in regard to the amount of contribution, in a suit against another person. The like difficulty may arise in cases where an apportionment is to be made under a contract for the payment of money or rent, where the parties are numerous and the circumstances complicated. Whereas, in equity, all parties can at once be brought before the court in a single suit; and the decree apportioning the rent will thus be conclusive upon all the parties in interest." And unless all the different parties, upon whom the common burden rests, are joined in a single suit, as they can be in equity, though absolutely impossible at common law, the most serious embarrassments may arise in fixing the proportion of each party, and in making it conclusive upon all others. For this reason, to do entire justice, a resort to a court of equity, where all the interests can be brought before the court, and definitely ascertained and disposed of, is indispensable. 1 Story, Eq. Jur. §§ 483-485. Mr. Spence considers the doctrine of apportionment as among those cases where a court of chancery has enforced obligations arising out of certain relations in which the parties stand towards each other, on the principles of equity or natural justice independently of contract, such obligations not being recognized or sufficiently or effectually enforced in the courts of common law. The author says that the right to sue for such purpose was an established head of chancery jurisdiction in the time of Elizabeth, on the plain principle of natural justice; that an apportionment binding on all parties cannot be effected in courts of law; but in a court of chancery one suit, in which all parties interested are present, concludes the litigation,—mentioning among the variety of cases where the principle has been applied, the apportionment of rent where land charged with the rent descends to co-heirs, or was conveyed to different purchasers. 1 Spence, Eq. *§§ 661-664; *Cuthbert* v. *Kuhn,* 3 Whart. 357, 31 Am. Dec. 513.

That a court of equity has jurisdiction of subject-matters involving apportionment has been expressly declared by this Court. In *Barton National Bank* v. *Atkins,* 72 Vt. 33, 47 Atl. 176, one ground of demurrer to the bill was that the action, if any, should be at law. There the liability of stockholders for the indebtedness of the corporation, to an amount equal to the par value of their stock, was involved. Overruling this ground of demurrer, the Court said: ''In proportion to their stock they must contribute to a common fund to be apportioned among the creditors entitled thereto, according to the relative amount of their debts proved. In the enforcement of this liability and the apportionment of the fund, there are equities among the creditors, among the stockholders, and between the creditors and stockholders, to be adjusted. A complete, convenient, and comprehensive remedy can be had only in a court of equity where the rights of all parties can be considered and relief requisite to meet the demands of justice granted in a single action.'' To the same effect are the cases of *Crown* v. *Brainerd,* 57 Vt. 625, and *Brown & Co.* v. *Ware,* 87 Vt. 121, 88 Atl. 507. In the case last cited, it being an action at law based upon a statute prohibiting debts being contracted by a corporation exceeding in amount two-thirds of the capital stock actually paid in, and making a director assenting to the creation of an indebtedness exceeding such an amount personally liable for the excess, it was held on demurrer to the declaration that the action could not be maintained; that relief could be had only ''in a court of equity where all the parties in interest may be before the court, all the various equities determined, and such a decree rendered in a single action as, in its several elements, shall be equitable and just to all concerned.''

In connection with the former holding in this case, that the Vermont courts may properly deal with the question as to who shall ultimately bear the burden of the taxes assessed on the property in question, wherever situated, no particular court was mentioned; but it is not to be supposed that any court was had in mind other than the one which, proceeding to judgment, can afford a plain, adequate, and complete remedy, doing justice to all concerned, according to their several rights and liabilities. This holding in the former opinion, when taken in connection with what is therein said concerning the doctrine of apportionment, as it must be to a proper understanding of the law as there laid down, clearly shows that in the opinion of the court, as there

expressed, while the allegations of the bill were not sufficient, when challenged by demurrer, for that purpose, yet when a case is presented on allegations sufficient in this respect, the courts of this State may properly determine the question as to who shall ultimately bear the burden of the taxes assessed on the property wherever situated.

Furthermore, the subject-matter of contribution and apportionment being within the original jurisdiction of equity, such jurisdiction is "of a permanent and fixed character," and "being once vested legitimately in the court, it must remain there, until the Legislature shall abolish, or limit it." 1 Story Eq. Jur. § 641; *Viele* v. *Hoag*, 24 Vt. 46; *Walker* v. *Cheever*, 35 N. H. 339.

It is said that an injunction is not necessary to protect a prior jurisdiction rightfully acquired by the Vermont court from being defeated by the institution of subsequent litigation over the same issue in another court; that the New Hampshire court is the one which first acquired rightful jurisdiction of the questions involved in the tax appeal now pending there. But we do not think that this is quite an accurate statement of the situation shown by the allegations of the amended bill. The question upon whom ultimately rests the burden of taxes assessed upon the property in question, depends upon the construction of the instruments by which the plaintiffs respectively hold the real estate and water rights under the Canal Company as grantor or lessor. The original bill sought a construction of those instruments, and in case the Canal Company's claim as to the construction be sustained, then the general prayer was sufficient for an apportionment of the tax assessed against that company and constituting the common charge. As was held on the demurrer to that bill, a court of equity has jurisdiction of the subject-matter, but the allegations of the bill were insufficient and the demurrer was sustained. But jurisdiction does not depend upon the sufficiency of the bill. If the court has jurisdiction of the subject-matter and of the parties, nothing more is required. A defective statement of the cause of action does not destroy jurisdiction. Jurisdiction of the particular matter does not mean simple jurisdiction of the particular case, but jurisdiction of the class of cases to which the particular case belongs. *O'Brien* v. *People*, 216 Ill. 354, 75 N. E. 108, 108 Am. St. Rep. 219, 3 Ann. Cas. 966. It follows that jurisdiction attached with the bringing

of this suit. See *Farmers' Loan & Tr. Co.* v. *Lake Street Elevated R. Co.,* 177 U. S. 51, 44 L. ed. 667, 20 Sup. Ct. 564.

It appears that the original bill was filed on September 10, 1912, and the demurrer thereto, on November 1, 1912. The amended bill alleges that on the day last named the Canal Company filed in the New Hampshire court, its petition for an abatement of taxes assessed on the real estate situate in the town of Walpole, for that year, etc.; that the supplemental bill in the suit at bar was thereupon brought and the company temporarily enjoined from prosecuting its said petition; that this petition was subsequently dismissed upon stipulation by and between the Canal Company, the town of Walpole, and the plaintiffs in the suit before us; that subsequently to the dismissal of the aforementioned petition, the Canal Company filed in the same court in New Hampshire, a similar petition against the town of Walpole, the selectmen thereof, and the plaintiffs in the suit at bar, for the abatement of the taxes assessed against the Canal Company in said town, on the same property, for the year 1914. The Canal Company was temporarily enjoined by the court of chancery in this State, from further prosecution of this last named petition, which injunction is still in force. The allegations and the prayer of each of the two petitions filed in the New Hampshire court, are more particularly stated in an earlier part of this opinion; and they show that the same question of the construction of the said Vermont deeds, leases, and contracts, is the primary one there involved, as is involved in the present case.

Therefrom it is pretty apparent that the real purpose of the petition, now pending in New Hampshire, is to have said question of construction determined by the court of that State, instead of by the court of Vermont wherein proceedings for that purpose were first instituted and are still pending. Thus the amended bill shows that the Vermont court of chancery acquired jurisdiction of the subject-matter and of the parties before any proceedings were instituted in the New Hampshire court involving the same primary and controlling question. It is a well established principle that the law of the state in which land is situated must be looked to for the rules which govern its descent, alienation, and transfer, and for the effect and construction of the conveyances. *Baxter* v. *Willey,* 9 Vt. 276, 31 Am. Dec. 623; *McGoon* v. *Scales,* 9 Wall. 23, 19 L. ed. 545; *Brine* v. *Hartford Fire Ins. Co.,* 96 U. S. 627, 24 L. ed. 858; *Baum* v. *Birchall,* 150

Pa. St. 164, 24 Atl. 620, 30 Am. St. Rep. 797; 5 R. C. L. 20. As already seen, everything by way of property, and property rights, conveyed by the deeds and leases under which the plaintiffs are holding, are situated within this State, except a portion of the incident which passed with the principal things under the grants and leases as ruled above. And the incident, so far as the pondage is concerned, is physically indivisible. It may be that under the circumstances the principle of law stated above is not applicable without reservation, yet it shows a clear equity in the plaintiffs to have the effect and construction of the conveyances determined according to the law of the place where the principal things conveyed, and a portion of the incident, are locally situate, and proceedings were first instituted for such purpose, rather than in conformity with the law of the foreign jurisdiction where only a portion of the incident is situate, and the proceedings to effect the same purpose are of later origin. Such foreign proceedings, and such suits at law as the defendant and its solicitors have threatened to bring against the plaintiffs and each of them in the courts of the State of New Hampshire, are contrary to equity and good conscience, and the plaintiffs in equity are entitled to an injunction restraining the defendant from instituting or prosecuting such proceedings or suits in the courts of that state. *Hazen* v. *Lyndonville Nat. Bank,* 70 Vt. 543, 41 Atl. 1046, 67 Am. St. Rep. 680; *Bank* v. *Rutland & B. R. Co.,* 28 Vt. 470; *Vt. & Can. R. R. Co.* v. *Vt. Cent. R. R. Co.,* 46 Vt. 792.

It is urged by the defendant that the last part of the alleged agreement and understanding by and between the parties at the time the first petition in the New Hampshire court was dismissed, namely, "that it was understood that these questions would be litigated in Vermont," is in effect an agreement to oust the jurisdiction of the New Hampshire court, and therefore contrary to public policy and void. Let this be as it may, we do not rest our holdings on that part of the agreement. The agreement as alleged is admitted by the demurrer, and is for consideration certainly as far as not objectionable on the ground named; also the alleged actions of the parties pursuant thereto and in consequence thereof.

*The pro forma decree overruling the demurrer and adjudging the amended bill sufficient, is affirmed. The pro forma de-*

*cree for the plaintiffs in accordance with the prayer of the amended bill, is reversed pro forma, and cause remanded to be proceeded in.*

HASELTON, J., concurs in the result.