# UNITED STATES *v.* LESLIE SALT CO.

No. 74. Argued December 7, 1955.—Decided March 5, 1956.

*John F. Davis* argued the cause for the United States. With him on the brief were *Solicitor General Sobeloff, Assistant Attorney General Holland, Ellis N. Slack, A. F. Prescott* and *Fred E. Youngman.*

*Bruce M. Casey, Jr.* argued the cause for respondent. With him on the brief was *Walter C. Fox, Jr.*

*Chester Rohrlich* filed a brief for Rayonier Incorporated, as *amicus curiae,* urging affirmance.

MR. JUSTICE HARLAN delivered the opinion of the Court.

On February 1, 1949, Leslie Salt Company, being in need of funds to meet maturing bank loans and for work-

ing capital, borrowed $3,000,000 from the Mutual Life Insurance Company of New York and $1,000,000 from the Pacific Mutual Life Insurance Company. As evidence of the indebtedness Leslie Salt delivered to each insurance company its "3¼% Sinking Fund Promissory Note Due February 1, 1964" in these amounts. The question presented is whether these instruments are subject to the documentary stamp taxes laid on "all bonds, debentures, or certificates of indebtedness issued by any corporation . . . ." under §§ 1800 and 1801 of the Internal Revenue Code of 1939.[1]

The Commissioner of Internal Revenue held the tax applicable, considering the two instruments to be "debentures" within the meaning of § 1801. However, in a tax recovery suit instituted by Leslie Salt, following payment of the tax under protest and the Commissioner's denial of a refund, the District Court [2] and the Court of Appeals [3] held the instruments not to be "debentures" or otherwise subject to stamp taxes. We brought the case here, 349 U. S. 951, to resolve the uncertainty left by lower court

---

[1] SEC. 1800. "There shall be levied, collected, and paid, for and in respect of the several bonds, debentures, or certificates of stock and of indebtedness, and other documents, instruments, matters, and things mentioned and described in sections 1801 to 1807, inclusive, or for or in respect of the vellum, parchment, or paper upon which such instruments, matters, or things, or any of them, are written or printed, the several taxes specified in such sections." 53 Stat. 195, 26 U. S. C. § 1800.

SEC. 1801. "On all bonds, debentures, or certificates of indebtedness issued by any corporation, and all instruments, however termed, issued by any corporation with interest coupons or in registered form, known generally as corporate securities, on each $100 of face value or fraction thereof, 11 cents: *Provided,* That every renewal of the foregoing shall be taxed as a new issue . . . ." 53 Stat. 195–196, 26 U. S. C. § 1801.

[2] 110 F. Supp. 680.

[3] 218 F. 2d 91.

decisions as to whether § 1801 applies to corporate notes of this type.[4]

Except as to amounts and payees, the two instruments in question were in identical terms, having these principal features: (1) each instrument carried the promissory note description already indicated; (2) each had a maturity of 15 years; (3) each carried interest of $3\frac{1}{4}\%$ payable August 1 and February 1 of each year on the unpaid balance; and (4) each was subject to the terms of an underlying agreement containing elaborate provisions for the protection of the note holders. Among those provisions was one under which each insurance company could re-

---

[4] Decisions in the Courts of Appeals pointing toward the taxpayer's view are *Curtis Publishing Co.* v. *Smith,* 220 F. 2d 748 (C. A. 3d Cir.); *Niles-Bement-Pond Co.* v. *Fitzpatrick,* 213 F. 2d 305 (C. A. 2d Cir.); *United States* v. *Ely & Walker Dry Goods Co.,* 201 F. 2d 584 (C. A. 8th Cir.); *Allen* v. *Atlanta Metallic Casket Co.,* 197 F. 2d 460 (C. A. 5th Cir.); *Belden Mfg. Co.* v. *Jarecki,* 192 F. 2d 211 (C. A. 7th Cir.), and in the District Courts are *Bijou Theatrical Enterprise Co.* v. *Menninger,* 127 F. Supp. 16 (D. C. E. D. Mich.); *Knudsen Creamery Co. of California* v. *United States,* 121 F. Supp. 860 (D. C. S. D. Calif.); *Shamrock Oil & Gas Co.* v. *Campbell,* 107 F. Supp. 764 (D. C. N. D. Tex.); *Follansbee Steel Corp.* v. *United States,* 4 P–H 1955 Fed. Tax Serv. ¶72,715 (D. C. W. D. Pa.); *United Air Lines, Inc.* v. *United States,* 4 P–H 1955 Fed. Tax Serv. ¶72,567 (D. C. N. D. Ill.); *Motor Finance Corp.* v. *United States,* 4 P–H 1954 Fed. Tax Serv. ¶72,706 (D. C. D. N. J.). Decisions in the Courts of Appeals pointing the other way are *General Motors Acceptance Corp.* v. *Higgins,* 161 F. 2d 593 (C. A. 2d Cir.), and *Commercial Credit Co.* v. *Hofferbert,* 188 F. 2d 574 (C. A. 4th Cir.), and in the District Courts are *S. S. Pierce Co.* v. *United States,* 127 F. Supp. 396 (D. C. D. Mass.); *H. Kobacker & Sons Co.* v. *United States,* 124 F. Supp. 211 (D. C. N. D. Ohio); *General Motors Acceptance Corp.* v. *Higgins,* 120 F. Supp. 737 (D. C. S. D. N. Y.); *United States* v. *General Shoe Corp.,* 117 F. Supp. 668 (D. C. M. D. Tenn.); *Gamble-Skogmo, Inc.* v. *Kelm,* 112 F. Supp. 872 (D. C. D. Minn.); *Sharon Steel Corp.* v. *United States,* 4 P–H 1955 Fed. Tax Serv. ¶72,716 (D. C. W. D. Pa.); and *Stuyvesant Town Corp.* v. *United States,* 124 Ct. Cl. 686, 111 F. Supp. 243 (Ct. Cl.).

quire Leslie Salt to convert its note, which was typewritten on ordinary white paper, into a series of new notes in denominations of $1,000 or multiples thereof, "either in registered form without coupons or in coupon form, and in printed or in fully engraved form." [5]  This option has not been exercised by either note holder.

These transactions with the two insurance companies constituted a variety of "private placement," a method of corporate financing which, because of its economies and conveniences, has become popular since the enactment of the Securities Act of 1933.  The Government claims that these notes are taxable under § 1801 either as "debentures" or "certificates of indebtedness."  The taxpayer, on the other hand, contends that these terms, undefined in the statute, do not include notes of the type

---

[5] Other provisions of these agreements may be summarized as follows: (1) The basic terms under which the insurance companies agreed to "purchase" the Leslie Salt notes.  (2) Representations by Leslie Salt that financial statements and lists of property holdings submitted by it were complete and accurate.  (3) Various conditions precedent to the purchase of the notes, including: opinion by counsel that the transaction was authorized under the applicable state law; that the balance of the $4,000,000 loan was subscribed; and that the loan documents would be in form satisfactory to counsel.  (4) A representation by the lender that it was not acquiring the note for the purpose of sale.  (5) A provision for prepayment by Leslie Salt of $285,000 principal amount for each year, without premium, and of an additional $285,000 annually at the option of Leslie Salt, also without premium, as long as the prepayment came from earnings or liquidation of assets.  Leslie Salt had the right to make further prepayments, but subject to a premium of 3%, which after the first three years of the note descended in amount at the rate of $\frac{1}{4}\%$ each year. (6) Leslie Salt promised to pay all its taxes, keep its property in repair, keep accurate records, insure its properties, and make regular financial statements to the holders of the notes.  (7) Leslie Salt promised not to become indebted, not to pay dividends or retire stock, except as provided in the agreement, and not to change the nature of its business or let its working capital decline beneath a specified amount.

here in issue.   Taking the statute in light of its legislative and administrative history, we agree with the taxpayer's contention.

"Debentures" and "certificates of indebtedness," along with other kinds of corporate securities, have been subject to stamp taxes since 1898, except for the period between 1902 and 1914.[6]   "Promissory notes" were also subject to stamp duties from 1898 to 1901 and from 1914 until 1924, when the tax was repealed;[7] it has never been re-enacted. The tax on "promissory notes," however, was always carried in a section separate from that containing the tax on "bonds, debentures, or certificates of indebtedness," and was always at a rate lower than the tax on those instruments.   Since promissory notes, debentures, and certificates of indebtedness all serve the same basic purpose—that is, as evidence of a debt—this former legislative distinction between promissory notes and the other instruments assumes significance in determining whether the present notes are taxable.   For unless the earlier statutes were intended to impose two taxes on the same instrument, which we should not assume, or the present tax on debentures and certificates of indebtedness is broader in scope than that in effect in 1924, of which there is no indication, it would seem to follow that these notes should not now be taxed if they can be said to fall within the class of "promissory notes" on which the tax was repealed.

---

[6] Act of June 13, 1898, 30 Stat. 448, 451, 458; Act of March 2, 1901, 31 Stat. 938, 940, 942; repealed by the Act of April 12, 1902, 32 Stat. 96, 97; re-enacted in the Act of October 22, 1914, 38 Stat. 745, 753, 759, and carried forward in subsequent Revenue Acts.

[7] Act of June 13, 1898, 30 Stat. 448, 451, 459; repealed by the Act of March 2, 1901, 31 Stat. 942; re-enacted in the Act of October 22, 1914, 38 Stat. 745, 753, 760; carried over in the Revenue Acts of 1917, 1918, and 1921, 40 Stat. 300, 319, 323; 40 Stat. 1057, 1133, 1137; 42 Stat. 227, 301, 305, and repealed by the Revenue Act of 1924, 43 Stat. 253, 352.

The Government argues that the repealed promissory note provision related only to ordinary short-term paper customarily used in day-to-day commercial transactions, and that it did not embrace notes, like those here involved, of large amounts, long maturity, and secured by an elaborate underlying agreement. See *General Motors Acceptance Corp.* v. *Higgins,* 161 F. 2d 593, 595. The existence of these features, however, does not render either of the Leslie Salt instruments any the less a promissory note, as each was captioned. Nor do we find anything in the earlier legislation or in its history which satisfies us that this type of note would not have been taxable at the lower rate provided in the promissory note section of the former statute. See *Niles-Bement-Pond Co.* v. *Fitzpatrick,* 213 F. 2d 305, 308–310. Moreover, the administrative interpretations of the Treasury, discussed below, affirmatively indicate that they would have been considered taxable under that section.

But even assuming that these notes could not fairly be called "promissory notes," it does not follow that they must therefore be regarded as "debentures" or "certificates of indebtedness." That depends upon the meaning of those terms in the statute, and upon whether these notes, regardless of their descriptive caption, have the essential characteristics of "debentures" or "certificates of indebtedness," as those terms are used in the statute. *General Motors Acceptance Corp.* v. *Higgins, supra; Niles-Bement-Pond Co.* v. *Fitzpatrick, supra.* And in determining the scope of the statute, which has remained substantially unchanged since its first enactment, the Treasury's interpretations of it are entitled to great weight. *White* v. *Winchester Club,* 315 U. S. 32, 41.

The administrative history of the statute establishes that until 1947, when the *General Motors* case, *supra,* was decided, only those instruments were considered subject to the "debenture" tax which were issued (1) in series,

(2) under a trust indenture, and (3) in registered form or with coupons attached. In other words, that tax was considered to apply only to marketable corporate securities, as that term is generally understood. Conversely, corporate promissory notes lacking any of those features, such as those issued by respondent, were taxed at the lower promissory note rate until that tax was repealed in 1924, and were not taxed thereafter until the Government's success in the *General Motors* case in 1947.

As early as 1918 the Treasury, in distinguishing instruments taxable at the "bond" and "debenture" rate from those taxable at the lower "promissory note" rate, then still in force, drew the line as follows:

> "(3) Instruments containing the essential features of a promissory note, but issued by corporations in numbers under a trust indenture, either in registered form or with coupons attached, embodying provisions for acceleration of maturity in the event of any default by the obligor, for optional registration in the case of bearer bonds, for authentication by the trustee, and sometimes for redemption before maturity, or similar provisions, are bonds within the meaning of the statute, whether called bonds, debentures, or notes. However, a short-term instrument, although issued by a corporation under a trust indenture, may be regarded as a note if every instrument of such issue both (*a*) is payable to bearer and incapable of registration and (*b*) lacks interest coupons and so requires presentation upon each payment of interest." T. D. 2713, May 14, 1918, 20 Treas. Dec. Int. Rev. 358 (1918).[8]

---

[8] In this same Treasury Decision "promissory note" was defined as "An instrument not under seal containing a simple promise to pay a sum of money at a specified time, *such as is common in everyday commercial use,* is a promissory note within the meaning of the

When Congress in 1918 amended the existing statute by adding the language "and all instruments, however termed, issued by any corporation with interest coupons or in registered form, known generally as corporate securities . . . ," still found in § 1801, the Treasury recognized that this was in effect an enactment of its prior restrictive interpretation.[9] The regulations which followed the repeal in 1924 of the tax on promissory notes did not purport to enlarge the scope of the tax on "bonds" or "debentures"; the Treasury adhered to the same interpretation issued under the previous statute.[10] The regu-

statute." It should be noted that the qualification which we have italicized was omitted from the definition of "promissory note" in the Regulations promulgated one year later. See note 10, *infra*.

[9] The then Solicitor of Internal Revenue, Mr. Robert N. Miller, expressed this view:

"The words 'all instruments, however termed, issued by any corporation with interest coupons or in registered form, known generally as corporate securities,' were clearly added in recognition of the varied forms in which corporate securities are issued, and to defeat any attempt by a corporation to avoid the tax by issuing instruments of the general character of bonds, debentures, or certificates of indebtedness under a different name." Sales Tax Rulings, L. O. 909, December 1920, ST. 1–20–85.

[10] "ART. 8. Instruments issued in numbers, under a trust indenture, are bonds.—Instruments containing the essential features of a promissory note, but issued in series, secured by a trust indenture, either in registered form or with coupons attached, embodying provisions for acceleration of maturity in the event of any default by the obligor, for optional registration in the case of bearer bonds, for authentication by the trustee, and in some instances for redemption before maturity, or similar provisions, are bonds within the meaning of the statute, whether called bonds, debentures, or notes." Treasury Regulations 55, September 13, 1924.

The regulations preceding the repeal of the tax on promissory notes provided:

"ART. 8. Instruments issued by corporations in numbers, under a trust indenture, are bonds.—Instruments containing the essential

lations were amended in 1941 to the less specific, but not inconsistent, form under which the present notes were taxed.[11] Finally, explicit recognition that the attempt to tax notes not having the features of marketable cor-

features of a promissory note, but issued by corporations in series, secured by a trust indenture, either in registered form or with coupons attached, embodying provisions for acceleration of maturity in the event of any default by the obligor, for optional registration in the case of bearer bonds, for authentication by the trustee, and in some instances for redemption before maturity, or similar provisions, are bonds within the meaning of the statute, whether called bonds, debentures, or notes.

.     .     .     .     .

"ART. 48. 'Promissory note' defined.—A promissory note is an unconditional promise in writing made by one person to another signed by the maker engaging to pay on demand or at a fixed or determinable future time, a sum certain in money to such other person or to order or to bearer, free from restrictions as to registration or transfer and usually without coupons." Treasury Regulations 55, June 11, 1919.

The 1920 revision of Regulations 55 was substantially identical, as were the Regulations issued under the Revenue Act of 1921 (Regulations 55, Articles 8 and 35).

[11] SEC. 113.50. "*Scope of tax.* Section 1801 imposes a tax upon the issue by any corporation of bonds, debentures, certificates of indebtedness, and all instruments, however termed, with interest coupons or in registered form and known generally as corporate securities. Every renewal of the above described instruments is taxable as a new issue."

SEC. 113.55. "*Issues subject to tax.* Ordinarily, a corporate instrument styled a bond, debenture, or certificate of indebtedness is subject to the tax. However, the taxability of an instrument is not determined by the name alone but depends upon all the circumstances, such as the name, form, and terms of the instrument, etc. Hence, an instrument, however designated, having all the essential characteristics of a bond, debenture, or certificate of indebtedness is taxable as such. Similarly, an instrument issued with interest coupons, or with provision for registration, and coming within the class known generally as corporate securities will be held subject to the tax regardless of the name by which it may be called." 26 CFR, 1944 Cum. Supp., §§ 113.50, 113.55.

porate securities was a departure from prior Treasury practice is found in a ruling by the Commissioner of Internal Revenue that *General Motors* would not be applied retroactively:

> "The Bureau has for a considerable period of time held that an instrument termed 'note,' not in registered form and issued without interest coupons, is not subject to the stamp tax upon issuance or transfer. Because of this long and uniform holding of the Bureau and the consequent reliance of corporations on these rulings, it has been concluded that, under the authority contained in section 3791 (b) of the Internal Revenue Code, the decision in *General Motors Acceptance Corporation* v. *Higgins, supra,* will not be applied retroactively, except that any tax which has been paid on the issuance or transfer of instruments falling within the scope of the decision will not be refunded." Cum. Bull. 1948-2, M. T. 32, p. 160.

The term "certificate of indebtedness" has a similar administrative background. Since 1920 the Treasury has considered certificates of indebtedness as akin to bonds and debentures, including "only instruments having the general character of investment securities, as distinguished from instruments evidencing debts arising in ordinary transaction between individuals . . . ." Sales Tax Rulings, L. O. 909, December 1920, ST. 1-20-85; Regs. 55 (Art. 14), October 26, 1920, 22 T. D. Int. Rev. 502 (1920).[12] The essence of an "investment security"

---

[12] The ruling by the Solicitor of Internal Revenue said:

"The Century Dictionary defines 'debenture' as 'A writing acknowledging a debt; specifically, an instrument, generally under seal, for the repayment of money lent; usually, if not exclusively, used as obligations of corporations or large moneyed copartnerships, issued in a form convenient to be bought and sold as investments.' This

is, of course, marketability, and this basic feature the Leslie Salt notes did not have. The Treasury itself has acknowledged that promissory notes lacking this quality have never been taxed as "certificates of indebtedness,"

definition was adopted by the court in Barton Nat. Bank *v.* Atkins, 72 Vt. 55; 47 Atl. 176, 180. The term 'certificates of indebtedness' has also come to have in commercial use a similar meaning. In Denver *v.* Home Savings Bank, 236 U. S. 101, 105, the court said:

" 'What is true about bonds is true about certificates of indebtedness. Indeed it is difficult to see any distinction between them as they are commonly known to the business world. The essence of each is that they contain a promise under seal of the corporation to pay a certain sum to order or bearer.'

"If the term 'certificates of indebtedness' standing by itself be susceptible of a broader meaning than that given to it above, its association here with bonds and debentures excludes such broader meaning. The maxim *noscitur a sociis* applies.

"A consideration of Title XI as a whole supports the conclusion above arrived at. Three classes of paper issued by individuals, partnerships, and corporations are subject thereunder to stamp tax: Bonds of indebtedness (subdivision 1), certificates of stock (subdivision 3), and drafts or checks and promissory notes (subdivision 6); i. e., instruments possessing to a greater or less extent the attributes of commercial paper.

"The premises lead inevitably to the conclusion that it was not the intention of Congress to tax under subdivision 1 of the said Schedule A every evidence of indebtedness other than those included under the heads of shares or certificates of stock, promissory notes, or bills of exchange, but only those evidences of indebtedness which have the general character of investment securities and which may properly be included under the term 'bonds of indebtedness.' The definition of 'certificate of indebtedness' as 'primarily any instrument acknowledging liability for the payment of money, not in the recognized form of a promissory note or bill of exchange,' contained in T. D. 2713, is too inclusive and does not sufficiently delimit the instruments included in the term.

"It is therefore held that the term 'certificate of indebtedness' as used in subdivision 1 of Schedule A, Title XI, Revenue Act of 1918, includes only instruments having the general character of in-

Cum. Bull. 1948–2, M. T. 32, p. 160 (*supra,* p. 393), and none of the lower court cases, including *General Motors, supra,* have regarded instruments such as the Leslie Salt notes as being certificates of indebtedness. Moreover, it may be observed that in the stamp tax sections of the Internal Revenue Code of 1954 the words "certificates of indebtedness," consistently with this administrative history, have been eliminated as a separate taxable category of corporate instruments, and are employed simply as a term of art embracing all the instruments taxed, that is, "bonds," "debentures" and other instruments in registered form or with coupons. Internal Revenue Code of 1954, §§ 4311, 4381, 68A Stat. 514, 523, 26 U. S. C. §§ 4311, 4381.

In contrast to the position it had consistently taken throughout the many years preceding the decision in the *General Motors* case, the Treasury now argues "that Congress intended in Section 1801 to cover all long-term debt obligations supported by elaborate protective covenants and that this is so regardless of the details of the papers used, the language by which the transaction was consummated or the nature of the purchaser's business." This contention seems to stem from the belief that had the "private placement" method of financing been as widely known in 1924 as it is now, Congress would not have repealed the promissory note tax in its entirety, as it did. But if that be so it is nevertheless for Congress, not the courts, to change the statute. We must deal with the statute as we find it, and if these instruments are neither

vestment securities, as distinguished from instruments evidencing debts arising in ordinary transaction between individuals; and that conditional bills of sale are not certificates of indebtedness.

"T. D. 2713 should be modified to conform with this holding.

"Robert N. Miller,
*"Solicitor of Internal Revenue."*

"debentures" nor "certificates of indebtedness" they may not be taxed under the present statute. These taxes are based not upon the nature of the transaction involved, but upon the character of the instruments employed. As long ago as 1873, this Court said: "The liability of an instrument to a stamp duty, as well as the amount of such duty, is determined by the form and face of the instrument, and cannot be affected by proof of facts outside of the instrument itself." *United States* v. *Isham,* 17 Wall. 496, 504.

There are persuasive reasons for construing "debentures" and "certificates of indebtedness" in accordance with the Treasury's original interpretation of those terms in this statute's altogether comparable predecessors. In *Norwegian Nitrogen Prod. Co.* v. *United States,* 288 U. S. 294, 315, Mr. Justice Cardozo said:

> "administrative practice, consistent and generally unchallenged, will not be overturned except for very cogent reasons if the scope of the command is indefinite and doubtful. *United States* v. *Moore,* 95 U. S. 760, 763; *Logan* v. *Davis,* 233 U. S. 613, 627; *Brewster* v. *Gage,* 280 U. S. 327, 336; *Fawcus Machine Co.* v. *United States,* 282 U. S. 375; *Interstate Commerce Commn.* v. *N. Y., N. H. & H. R. Co.,* 287 U. S. 178. The practice has peculiar weight when it involves a contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in. motion, of making the parts work efficiently and smoothly while they are yet untried and new."

Against the Treasury's prior longstanding and consistent administrative interpretation its more recent *ad hoc* contention as to how the statute should be construed cannot stand. Moreover, that original interpretation has had both express and implied congressional acquiescence,

through the 1918 amendment to the statute (*supra,* p. 391), which has ever since continued in effect, and through Congress having let the administrative interpretation remain undisturbed for so many years. See *Corn Products Refining Co.* v. *Commissioner,* 350 U. S. 46, 53; *Norwegian Nitrogen Prod. Co.* v. *United States, supra,* at p. 313.[13]   Still further, it is an interpretation which is in accord with the generally understood meaning of the term "debentures."   Cf. *First Nat. Bank* v. *Flershem,* 290 U. S. 504, 508.[14]   "The words of the statute [a stamp tax statute] are to be taken in the sense in which they will be understood by that public in which they are to take effect."   *United States* v. *Isham, supra,* at p. 504.

---

[13] It should be said that the administrative practice, which we consider as crucial here, was not brought to the attention of the Court of Appeals in *Niles-Bement-Pond Co.* v. *Fitzpatrick, supra.* Nor do *General Motors Acceptance Corp.* v. *Higgins, supra,* or any of the cases cited in note 4, *supra,* advert to that practice.

[14] As long ago as 1916, no less an authority on corporate finance than the late Mr. F. L. Stetson described debentures in the following terms:

"In the United States, as already mentioned, the term 'debenture' is understood to mean serial obligations of a corporation not secured by a specific mortgage, pledge or assignment of property.   Of course a series of debentures may be issued without the execution of any indenture relating thereto.   Prior to 1900 the few issues that had been made of such debentures were not accompanied by a trust agreement.   In such case the rights and privileges given to bondholders were set forth at length in the obligation, thus making a somewhat lengthy instrument.   Since an issue of debentures under trust agreements by the Lake Shore R. R. Co. and by the New York Central, the custom of adopting such agreements has become general.   Originally in 1893 the General Electric Company made a large issue of debentures without an agreement, but at the time of the refunding in 1912 a trust agreement was executed."   "Preparation of Corporate Bonds, Mortgages, Collateral Trusts and Debenture Indentures," in Some Legal Phases of Corporate Financing, Reorganization and Regulation, p. 66 (Assn. of the Bar of the City of New York, 1917).

Construing the statute as we have, we conclude that the Leslie Salt notes are neither "debentures" nor "certificates of indebtedness" within its meaning. The fact that the agreement underlying these notes provides for the substitution of instruments which might qualify as debentures does not render these notes taxable, for until debentures are in existence the "debenture" tax cannot be imposed.

We hold these notes are not subject to stamp taxes under the statute.

*Affirmed.*