**MACAN ESTATES, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

United States District Court
S. D. New York.

May 10, 1961.

Joseph Greenberg, New York City, for plaintiff.

Morton L. Ginsberg, Esq., Asst. U. S. Atty., New York City, of counsel, for defendant.

THOMAS F. MURPHY, District Judge.

These are cross motions for judgment on the pleadings. The question presented is—Did the extension agreement which was entered into by Tillie Feldman with the Metropolitan Life Insurance Company on September 30, 1958, involve the renewal of a corporate certificate of indebtedness?

Plaintiff sues for a refund of $1662.32, representing the face value of documentary stamp taxes affixed by plaintiff to the above described extension agreement pursuant to §§ 4311, 4312 and 4381 (a) of the Internal Revenue Code of 1954, 26 U.S.C.A. §§ 4311, 4312, 4381(a). Plaintiff's claim for refund was rejected and this suit followed.

There is no dispute as to the following facts: On September 30, 1927, the F. H. Building Corporation executed and delivered to the Metropolitan Life Insurance Company a bond and mortgage in the sum of $2 million. The bond contained in part the following language:

"It is also expressly understood and agreed, by and between the parties hereto, that this obligation shall be and remain in full force and effect and in no wise be impaired until the actual payment of said sums to said obligee. And in case of a sale or transfer of any property embraced in a mortgage collateral to this bond, and in case of any agreement or stipulation between the owner or owners of said mortgaged property and the said obligee, extending the time or modifying the terms of payment above recited, then the above-mentioned obligor shall continue liable to pay the sum above secured according to the tenor of such agreement, unless expressly released and discharged in writing by the above-named obligee."

In 1944 title to the mortgaged premises was acquired by the Andrew Miles Realty Co., Inc., subject to the mortgage and an extension agreement was entered into with the mortgagee, the Metropolitan Life Insurance Company. That extension agreement is not in issue.

In 1949 title to the property subject to the mortgage was acquired by Julie Bezazian who, on March 25, 1949, entered into an agreement with the Metropolitan extending the time for payment of the bond and mortgage and thereafter, on

the same day, title to the property was conveyed to plaintiff subject to the mortgage. Relevant portions of the Bezazian agreement are:

"1. That the Mortgagor [defined as Julie Bezazian] will pay the indebtedness as hereinbefore provided * * *.

"All of the terms, clauses, conditions, and covenants in said Bond and Mortgage contained, or as modified by any written agreement, shall remain unaltered and of full force and effect, except as modified herein * * *.

"The Mortgagee, at the request of the Mortgagor, hereby waives for itself, its successors and assigns, all rights and claims arising out of any provison in any instrument heretofore made, whereby any corporation agreed, notwithstanding that the time of payment might thereafter be extended by agreement with another owner, to continue liable for the payment of the whole or any part of the principal sum remaining unpaid.

"This agreement shall bind and inure to the benefit of the respective distributees, legal representatives, successors and assigns of the Mortgagor and of the Mortgagee and may not be changed orally, but only by an agreement in writing and signed by the party against whom enforcement of any waiver, change, modification or discharge is sought."

Subsequently plaintiff and Metropolitan agreed upon a further extension of time for the payment of the outstanding indebtedness.[1] This extension agreement upon which the tax in issue was imposed provides:

"All the terms, clauses, conditions, and covenants in said Mortgage and in the obligations secured thereby, contained, or as modified by any written agreement, shall remain un-

altered and of full force and effect, except as modified herein.

"Whenever and wherever used herein 'Mortgage' shall mean coordinated or consolidated mortgages and 'obligation' shall mean the bonds, notes or obligation secured thereby, as the context may require."

Plaintiff requested a ruling by the Internal Revenue Service as to whether this extension agreement was subject to the documentary stamp tax. When the Service held that it was, the stamps were purchased and affixed and a claim for refund followed.

Sections 4311, 4312 and 4381 of the 1954 code provides:

"§ 4311. *Imposition of tax.*

"There is hereby imposed, on all certificates of indebtedness issued by a corporation, a tax at the rate of 11 cents on each $100 of face value or fraction thereof.

"§ 4312. *Renewals.*

"Every renewal of any certificate of indebtedness shall be taxed as a new issue.

"§ 4381. *Definitions.*

(a) *Certificates of Indebtedness.*

"For purposes of the taxes imposed by sections 4311 and 4331, the term 'certificates of indebtedness' means bonds, debentures, or certificates of indebtedness; and includes all instruments, however termed, issued by a corporation with interest coupons or in registered form, known generally as corporate securities."

The parties agree that the original bond given by the F. H. Building Corporation was a "certificate of indebtedness issued by a corporation" within the meaning of § 4311 or § 4381(a) of the code.

It is plaintiff's theory that when the Metropolitan agreed on March 25, 1949,

1. To avoid personal liability plaintiff, with the consent of Metropolitan, transferred title to the property to Tillie Feldman, a "dummy" who at plaintiff's request ex-

ecuted a written extension agreement with the Metropolitan. Immediately after executing the agreement Feldman reconveyed the premises to the plaintiff.

with Julie Bezazian to modify the terms of the original bond and mortgage given by the F. H. Building Corporation, i. e., when it waived "all rights and claims arising out of any provision in any instrument heretofore made whereby any corporation agreed, notwithstanding that the time of payment might thereafter be extended by agreement with another owner, to continue liable for the payment of the whole or any part of the principal sum remaining unpaid," it in effect released and discharged the F. H. Building Corporation of its liability under the bond and mortgage; consequently, with such liability relieved and discharged there no longer existed a corporate bond or promise to pay and, accordingly, the Feldman extension was not an extension of a corporate bond.

Under the law of New York the original obligor here, F. H. Building Corporation, would be discharged from liability upon its bond to the extent of the value of the property mortgaged as security for the payment of the bond, by the grant of an extension of time to subsequent owners of the property for the maturity of the unpaid mortgage debt, without the knowledge and assent of F. H. Building Corporation. Murray v. Marshall, 94 N.Y. 611; Commercial Ins. Co. v. Roman, 269 N.Y. 451, 199 N.E. 658. However, that corporation had at the outset, waived its rights under New York law in that respect and agreed to continue liable upon the bond notwithstanding that subsequent owners were granted such extensions without its knowledge and assent. In the Bezazian agreement Metropolitan addressed itself to that waiver by F. H. Building Corporation and in effect erased it from the bond when Metropolitan waived its rights thereunder. In other words it put F. H. Building Corporation into the position it would have been in had there never been such a waiver on that obligor's part. Metropolitan's waiver in the Bezazian agreement did not expressly release and discharge F. H. Building Corporation

from its obligation on the bond; that effect, to the extent that there was a discharge, is not discernible without making reference to the law of New York, a source extraneous to the instrument itself. Metropolitan's waiver did not purport to change the nature of the instrument from a corporate obligation to an individual one; if that was the intent it was not at all expressed in appropriate language to effectuate it.

The law applicable in this case, which is not disputed, is that the taxability of an instrument must be determined solely from the terms of the instrument itself. United States v. Leslie Salt Co., 350 U.S. 383, 76 S.Ct. 416, 100 L.Ed. 441. The instrument herein states that all the terms, clauses and conditions of the original bond shall remain unaltered and of full force and effect except as modified. The only modification, as we have seen, was the waiver above described by Metropolitan which by resort to the law of New York we may assume discharged the F. H. Building Corporation from its obligations under its bond except to the extent that the property subject to the mortgage might prove to be inadequate to satisfy the debt due under the bond.

Plaintiff conceded that if its case depended solely upon a release of the corporate obligor under the bond, by implication and operation of law, then the instrument would remain a corporate obligation and subject to the stamp tax. Its argument that it was converted into an individual obligation by Metropolitan's waiver in 1949 we have demonstrated to be without merit. Accordingly, we find that it was and remained a corporate certificate of indebtedness and that the tax in issue was rightly collected.

Holding as we do, that documentary stamps were required on the extension agreement involved, plaintiff's motion for judgment is denied and the government's counter-motion for judgment is granted.

These are orders. No settlements are necessary.