UNITED STATES of America,
Appellant,

v.

WESTERN PACIFIC RAILROAD COM-
PANY, Appellee.

UNITED STATES of America,
Appellant,

v.

DENVER & RIO GRANDE WESTERN
RAILROAD COMPANY, Appellee.

Nos. 8855, 8856.

United States Court of Appeals
Tenth Circuit.

Aug. 8, 1967.

Rehearing Denied Dec. 26, 1967.

Norman Gary Knopf, Washington, D. C. (J. William Doolittle, Acting Asst. Atty. Gen., William T. Thurman, U. S. Atty., and Alan S. Rosenthal and Frederick B. Abramson, Attys., Dept. of Justice, on the brief), for appellant.

Grant H. Bagley, Salt Lake City, Utah (Van Cott, Bagley, Cornwall & Mc-

Carthy, Salt Lake City, Utah, on the brief), for appellees.

Albert W. Laisy, Baltimore, Md., for Baltimore and Ohio Railroad Co., amicus curiae (On Rehearing).

Before MURRAH, Chief Judge, and PICKETT and BREITENSTEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

The United States brought separate actions under § 16(9) of the Interstate Commerce Act, 49 U.S.C. § 16(9), against the railroads to enforce forfeitures allegedly arising from the extension of credit for freight charges in violation of an order of the Interstate Commerce Commission. The trial court sustained the railroads' motions to dismiss and the government has appealed.

On this appeal we are concerned with the interrelationship between § 3(2) and § 16(8) of the Interstate Commerce Act. Section 3(2) of the Interstate Commerce Act[1] provides in material part:

"No carrier by railroad * * * shall deliver or relinquish possession at destination of any freight * * * transported by it until all tariff rates and charges thereon have been paid, except under such rules and regulations as the Commission may from time to time prescribe to govern the settlement of all such rates and charges and to prevent unjust discrimination * * *."

Section 16(8) of the Act reads so far as pertinent:[2]

"Any carrier * * * who knowingly fails or neglects to obey any order made under the provisions of Sections 3, 13, or 15 of this title shall forfeit to the United States the sum of $5,000 for each offense."

In 1920, after public hearings, the Commission adopted Ex Parte Order No. 73 which has been amended twice.[3] This order recites the provisions of § 3(2) and the investigation which the Commission made. It then reads that: "*It is ordered,* That the following rules and regulations be, and they are hereby, prescribed * * *." 57 I.C.C. 596A. As amended, these rules and regulations permit the extension of credit up to a maximum of 120 hours after the delivery of the freight.

The complaints charge each railroad with three violations because of the lapse of varying periods from 8 to 33 days between the time of delivery and the time of payment. In each instance, the railroad billed the shipper promptly but payment was not made within the required period.

The issue is one of first impression. There appear to be no reported decisions applying § 16(8) or (9). The railroads contend that Ex Parte 73 is not such an order as is contemplated by § 16(8) because it neither commands nor prohibits any action. Its only function is to ameliorate the effect of § 3(2) by permitting limited extension of credit. The trial court agreed with the railroads and held that Ex Parte 73 is not the type of order contemplated by § 16(8) because it is "legislative in character" and because it is "a general regulation."

■ On these appeals the validity of Ex Parte 73 is not questioned. It is a proper exercise of the power delegated by Congress to the Commission to allow "reasonable variations, tolerances, and exemptions, which, because of their variety and need for detailed statement, it was impracticable for Congress to prescribe."[4] Except for Ex Parte 73 the

---

1. 49 U.S.C. § 3(2). This subsection was added by the Transportation Act of 1920, Ch. 91, 41 Stat. 456, which terminated federal control of the railroads after World War I. During Federal control, General Order No. 25 (See 57 I.C.C. 593) required that payment of transportation charges be on a cash basis.

2. 49 U.S.C. § 16(8). The same legislation that added § 3(2) amended § 16(8) so as to include § 3 within its terms.

3. See 57 U.C.C. 596A–596B, 171 I.C.C. 268, and 310 I.C.C. 391.

4. United States v. Shreveport Grain & Elevator Co., 287 U.S. 77, 85, 53 S.Ct. 42, 45, 77 L.Ed. 175.

freight could not have been delivered until the charges were paid.

 Section 16(8) imposes the sanction of forfeiture against one who "knowingly fails or neglects to obey any order made under the provisions of section 3." Section 16(9) says that the forfeiture shall be recoverable in a suit brought by the United States. An unambiguous statute must be given effect according to its plain and obvious meaning.[5] We find no ambiguity in § 16(8). It applies to any order made under § 3(2) whether that order be legislative or adjudicatory in character. To read § 16(8) as applicable only to adjudicatory orders is to disregard the plain language of the statute.

The validity of Ex Parte 73 depends on § 3(2). It is an order made under that section. Its purpose is to fill in "the interstices of the Act * * * through * * * quasi-legislative promulgation of rules."[6] The statute and the rules are exercises in futility unless some means is provided for enforcement. Section 16(8) and (9) provide the means. The statutory method of enforcement may not be avoided by the assertion that the Commission, before it invokes § 16(8), must adjudicate specific rights and responsibilities in specific instances. Under the procedure adopted by Congress, there is a judicial forfeiture for disobedience of "any order" made under § 3(2) without regard to whether that order is legislative or adjudicatory.

This conclusion raises no due process problems. The railroads have notice of the forfeiture proceedings and a full opportunity to be heard on the question of a violation of Ex Parte 73. We know of no reason why the fact of such violation has to be adjudicated by the Commission in advance of the court proceedings.

The railroads say that the complaints do not allege any violation of the order because they show that in each instance the billing date was on or before the delivery date and that no claim is made of an agreement for the extension of credit. Ex Parte 73 forbids the extension of credit—not an agreement for the extension of credit. The complaints assert that the railroads "frequently and knowingly engaged in the practice of extending credit in excess of 120 hours" and "did extend credit" for more than that period. The allegations are sufficient to state a claim for the forfeitures. Any defenses which the railroads may have must be developed at the trials on the merits. We express no opinion whether inability to collect equates with extension of credit. This may depend on the facts developed at the trials.

Reversed and remanded for further proceedings consistent with this opinion.

5. Christner v. Poudre Valley Cooperative Association, 10 Cir., 235 F.2d 946, 950. See also Jay v. Boyd, 351 U.S. 345, 357, 76 S.Ct. 919, 100 L.Ed. 1242, and

United States v. Zions Savings and Loan Association, 10 Cir., 313 F.2d 331, 336.

6. Securities & Exchange Commission v. Chenery Corporation, 332 U.S. 194, 202, 67 S.Ct. 1575, 91 L.Ed. 1995.