James D. **COLLUMS** and Mira M. **Collums, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. C79–035K.**

United States District Court, D. Wyoming.

Dec. 4, 1979.

---

William H. Brown and Claude W. Martin, of Brown, Drew, Apostolos, Massey & Sullivan, Casper, Wyo., for plaintiffs.

Jeffrey A. King and Barry L. Lieberman, Tax Div., Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OPINION

KERR, District Judge.

Taxpayers instituted this action seeking to obtain a refund of principal and interest on Federal income taxes alleged by them to have been assessed and collected illegally. The jurisdiction of this Court is invoked under 28 U.S.C. § 1346(a)(1).

The essential facts are not in dispute. James D. Collums and Mira M. Collums are husband and wife. Mira M. Collums is a plaintiff by reason of her filing a joint return as James D. Collums' wife. James D. Collums will hereinafter be referred to as "Taxpayer".

For the year 1975, taxpayers filed a joint return at the United States Internal Revenue Service Office in Ogden, Utah and paid the taxes shown therein to be due.

On November 13, 1978, the District Director of the United States Internal Revenue Service at Cheyenne, Wyoming issued a letter to taxpayers transmitting a copy of an IRS report of examination which disallowed the cost depletion deduction in their 1975 tax return and advised them that they had been assessed additional taxes plus interest for the year 1975 by reason thereof. On December 29, 1978, taxpayers paid the additional taxes plus interest and on January 8, 1979 filed an appropriate claim for refund (Form 1040X) with the Director of the United States Internal Revenue Service Office at Ogden, Utah.

On January 23, 1979, Taxpayer's claim for refund was rejected and disallowed as evidenced by a letter on Form 906(DO) (7–77) issued by Bob G. Hughes, District Director of the United States Internal Revenue Service at Cheyenne, Wyoming.

All of the transactions in question consist of the purchase by Taxpayer of oil and gas leases and the subsequent assignment of said leases for a cash bonus in excess of his cost with the retention by him of an overriding royalty in each of said leases.

The United States Supreme Court held in *Burnet v. Harmel*, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199 (1932) that for tax purposes the assignment of an oil and gas lease for value with the retention of an overriding royalty in the lease is a "sublease" and not a sale.

In every such transaction, as was conceded by the examining agent in his report of examination, the oil and gas lease covered lands that were "wildcat." A wildcat oil and gas lease is one that is unproven and that has no geological, geophysical, or other evidence indicating conditions favorable to the discovery of oil or gas thereon.

In each such transaction, Taxpayer received a cash price (bonus) for the assignment of a lease and retained an overriding royalty out of oil and gas, if any, which might be produced from said lease in the future during the term of such lease, which overriding royalty interests were in the range of three to five percent. If oil and gas were produced, the lease and the over-

riding royalty would continue as long as oil and gas were produced.

Infrequently, Taxpayer purchased lease interests in proximity to production but these were not wildcat leases. One block of such leases was inadvertently included in the claim for refund but was removed from the case during the trial and plaintiffs' claim was reduced by amendment to reflect the elimination of any claim for refund related to these leases.

The parties agreed that the primary business activity of Taxpayer was that of buying and selling wildcat oil and gas leases as a dealer in such properties. With respect to every wildcat lease purchased by Taxpayer, it was his intention and expectation to sell the lease and obtain a cash price in excess of his total basis therein so as to yield a cash profit at the time of sale without expecting royalties to be received from the lease.

The retention of overriding royalties by persons dealing in wildcat oil and gas leases has been a common practice in the oil and gas business for many years. In negotiating the price for the sale of such leases, the retention of such overriding royalty does not ordinarily cause a reduction in the price which the buyer is willing to pay, nor would a waiver of the right to retain the same result in a significantly higher price for the lease. In essence, such overriding royalty interests in this case were reserved and held by Taxpayer without actual cost. Ordinarily, persons dealing in such leases by virtue of a long prevailing practice in the industry are able to retain such overriding royalty interests without actual cost.

In the initial income tax return for 1975, Taxpayer allocated a basis to each retained overriding royalty in an amount proportionate to the ratio which the percentage of overriding royalty bore to the entire one hundred percent interest in the assigned lease. The Internal Revenue Service rejected this allocation. In his amended return, being also the claim for refund, Taxpayer eliminated this apportionment of basis to the retained overriding royalty for the reasons hereinafter stated.

The agent's report of examination of the 1975 income tax return discloses a contention by the Internal Revenue Service that where an overriding royalty is retained upon the assignment of a mineral lease, the transaction is a leasing transaction and not the sale of an asset. The agent's report concedes that cost depletion is available to the Taxpayer under U. S. Treasury Regulation § 1.612–3(a)(1). That regulation provides in relevant part:

If a bonus in addition to royalties is received upon the grant of an economic interest in a mineral deposit, or standing timber, there shall be allowed to the payee as a cost depletion deduction in respect of the bonus an amount equal to that proportion of his basis for depletion as provided in section 612 and § 1.612–1 which the amount of the bonus bears to the sum of the bonus and the royalties expected to be received.

U. S. Treasury Regulation § 1.612–3(a)(1) provides a formula for the calculation of such cost depletion which may be expressed as follows:

$$\text{Cost Depletion} = \frac{\text{adjusted basis}}{\text{in lease}} \times \frac{a}{a+b}, \text{ where}$$

a = bonus

b = royalties expected to be received in the future.

The issue presented for the consideration of the Court is whether Taxpayer is entitled to deduct his entire basis in the wildcat oil and gas leases as cost depletion on the purchase and sale of said wildcat oil and gas leases where there is no basis to support a reasonable expectation that any oil or gas production will occur during the term of the lease and accordingly no revenue will accrue to the overriding royalty.

Section 611 of the Internal Revenue Code of 1954 (26 U.S.C. § 611) provides for a reasonable allowance for depletion, to be made in accordance with regulations issued by the Secretary of the Treasury. U. S. Treasury Regulation § 1.612–3(a) was first issued in 1920 and amended in 1926. The Supreme Court considered the amended regulation in the case of *Murphy Oil Co. v. Burnet*, 287 U.S. 299, 53 S.Ct. 161, 77 L.Ed.

318 (1932). The Court held that the estimates of "royalties expected to be received" must be reasonable, saying:

> Where the estimates are reasonable, the formula affords a fair and convenient method of avoiding the present taxation of the bonus, when received, as income, in the face of the probability that it will ultimately prove not to be such.

In this case, the Taxpayer is not attempting to avoid taxation on the bonus as ordinary income to the extent that it exceeds his cost of the lease. The Court stated in *Murphy* that the taxpayer is not required to make estimates that are unreasonable, saying:

> But the regulation does not require him to make estimates which are unreasonable . . .

The Regulation considered by the Court in *Murphy* has not been substantially changed.

In *F.–K. Land Company v. Commissioner of Internal Revenue*, 34 B.T.A. 87 (1936), aff'd 90 F.2d 484 (9th Cir. 1937), the Board of Tax Appeals (now the Tax Court of the United States) found that, although the only income of the lessor from the leased property in the year in question was the lease bonus, there was a reasonable expectation of substantial income in the future from royalties because the lease was in a producing oil field. In *F.–K. Land Company*, neither the taxpayer nor the Commissioner introduced proof as to the amount of royalties which could be reasonably expected from the property in the future. The taxpayer's position was that since the Commissioner failed to determine the expected royalties, the taxpayer should be entitled to treat the entire bonus as a return of capital. The Board disagreed, holding that the taxpayer had the burden of proof with respect to the correct amount of depletion, stating:

> The sole condition which would entitle . . . (taxpayer) . . . to deduct the entire cost of this property is that the only probable return anticipated from the property is that represented by the bonus.

That condition has been satisfied in the case at bar. The Board concluded that the taxpayer did not establish this fact by merely pointing out that there had been no determination of the amount of anticipated royalties. The lease in question was in an oil field which had been in production for nearly 20 years, although the particular leased tract had not been operated. The Board indicated that the comparatively large bonus, together with the fact that the property lay in the Belridge Field, a proven field which had been producing for nearly twenty years, strongly indicated that substantial royalty payments would result from operation of the lease. The Board concluded:

> *It is only upon a reasonably justified anticipation of no future royalties that allowance of the . . . deduction in the entire amount of . . . (taxpayer's) . . . basis could be sustained.* (Emphasis added).

There is nothing in the statutes, regulations, or decisions precluding the Taxpayer from making a reasonable estimate that there will be no future income from the reserved overriding royalty.

With respect to estimating recoverable minerals, including oil and gas, the regulations provide a standard. U. S. Treasury Regulation § 1.611–2(c)(1) requires evidence "reasonably known" or on "good evidence believed" as to such estimates of future production. That regulation provides:

> (c) Determination of mineral contents of deposits. (1) If it is necessary to estimate or determine with respect to any mineral deposit as of any specific date the total recoverable units (tons, pounds, ounces, barrels, thousands of cubic feet, or other measure) of mineral products *reasonably known*, or *on good evidence believed*, to have existed in place as of that date, the estimate or determination must be made according to the method current in the industry and *in the light of the most accurate and reliable information obtainable.* In the selection of a unit of estimate, preference shall be given to the principal unit (or units) paid for in the produce marketed. *The estimate of the recoverable units of the mineral products*

*in the deposit for the purposes of valuation and depletion* shall include as to both quantity and grade:

(i) The ores and minerals "in sight", "blocked out", "developed", or "assured", in the usual or conventional meaning of these terms with respect to the type of deposits, and

(ii) "Probable" or "prospective" ores or minerals (in the corresponding sense), that is, ores or minerals that are believed to exist on the basis of good evidence although not actually known to occur on the basis of existing development. Such "probable" or "prospective" ores or minerals may be estimated:

(a) As to quantity, only in case they are extensions of known deposits or are new bodies or masses whose existence is indicated by geological surveys or other evidence to a high degree of probability, and

(b) As to grade, only in accordance with the best indications available as to richness. (Emphasis added).

There is no evidence in this action that oil and gas exists under the wildcat oil and gas leases involved in this case, nor any basis to support an expectation of production therefrom.

The narrow issue in this matter requires an interpretation of the provision of the U. S. Treasury Regulation § 1.612–3(a)(1), which requires an estimate of the "royalties expected to be received." The Taxpayer contends that the only reasonable estimate of the royalties expected to be received from the overriding royalties retained on the oil and gas leases in this case is zero.

In the instant case the experience of active dealers in wildcat oil and gas leases in Wyoming and the Rocky Mountain states reveals without dispute that the probabilities against a wildcat lease becoming productive ranges from 400 to one up to 1500 to one.

It is not in dispute in this case that the probability of any one of these wildcat leases ever being drilled is one in fifty, and the probability of an exploratory well thereon being a producer is one in ten. The probability of a set of events actually occurring is determined by multiplying together the probabilities of each of the events. This means that the probability of any of these wildcat leases ever becoming a producer is one out of 500.

Any estimate of future production on any such wildcat lease in excess of zero would have been purely speculative and not based on any known fact nor any "good evidence." An estimate of the "royalties expected to be received" in order to be reasonable must take into account the lack of any information to support an expectation of production and the experience of those dealing in such leases militating against the probability of any oil and gas being produced therefrom. In his amended return (1040X) and as to each wildcat lease transaction reflected therein, Taxpayer determined that the only royalties reasonably expected to be received from each of these leases was zero. Accordingly, he deducted his cost of the lease from the cash selling price in determining the amount of net profit resulting from the purchase and sale of such lease. This followed the formula for cost depletion.

The leases in this case were purchased by Taxpayer with the intention and expectation of selling such lease for a price in excess of his cost. In these transactions he did not expect, nor was there a basis to support an expectation, actually to receive royalties on the overriding royalty interests reserved.

In the case at bar, persons in the position of Taxpayer will retain the customary overriding royalties when available without cost because of the hopes of a discovery even though there is no basis upon which to project an expectation of production from any specific lease.

The government contends that because the overriding royalty has a speculative value, an estimate of royalties expected to be received can be computed from the speculative value of the overriding royalty.

The government's witness, James Mondrall, testified that he had developed a formula for determining "the royalties expect-

ed to be received." His formula is based upon a hypothetical spreading of production from one or two hypothetical producing leases over 1000 hypothetical wildcat leases and the averaging of such production proportionately on all such leases. This is done while recognizing that of the 1000 hypothetical wildcat leases 998 of them will not produce oil or gas. The evidence shows there is no organized market for the sale of overriding royalties in wildcat leases, and saleability may depend upon knowledge of the prospective drilling of a well or other exploratory activity which would affect the lease.

Section 614(a) of the Internal Revenue Code of 1954 (26 U.S.C. § 614(a)) and U. S. Treasury Regulation § 1.614(a) provide a method for estimating reserves of various minerals including oil and gas on a property by property basis, stating:

> For the purpose of computing the depletion allowance in the case of mines, wells, and other natural deposits, the term "property" means each separate interest owned by the taxpayer in each mineral deposit in each separate tract or parcel of land.

In the oil and gas industry, the basic unit is the lease. The provisions of Section 614 require that in estimating reserves, the estimate must be made separately on each lease, except in circumstances not here present.

The evidence adduced by the government as to "fair market value" cannot be used for the wildcat oil and gas leases involved in this case. The government called as a witness, Steve Champlin, who testified that on the occasions when he appraised overriding royalties, he established his opinion of their fair market value by applying as a test the price that he would pay for the overriding royalty if he had information that a well was to be drilled in the area. In the present case there is no evidence that any drilling would be undertaken in the area of these leases.

■ In applying U. S. Treasury Regulation § 1.612–3(a)(1), the Court must look first to the language of the regulation.

*United States v. Ray*, 488 F.2d 15, 18 (10th Cir. 1973). This Court must deal with the regulation as it finds it. *United States v. Leslie Salt Co.*, 350 U.S. 383, 395–397, 76 S.Ct. 416, 100 L.Ed. 441 (1956). An unambiguous regulation must be given effect according to its plain and obvious meaning. *United States v. Western Pacific Railroad Co.*, 385 F.2d 161, 163 (10th Cir. 1967); *Christner v. Poudre Valley Cooperative Association*, 235 F.2d 946, 950 (10th Cir. 1956).

■ U. S. Treasury Regulation § 1.612–3(a)(1) does not use the term "value" nor does it contain any provision concerning "marketability" or "fair market value" of the overriding royalty interest. The clear and understandable language of the regulation requires an estimate of "the royalties expected to be received." The government's interpretation of the U. S. Treasury Regulation § 1.612–3(a)(1) is manifestly contrary to the plain meaning of the clear and understandable language of the regulation. The language of the regulation must control and be given effect. *Marathon Oil Co. v. Kleppe*, 556 F.2d 982, 986 (10th Cir. 1977).

■ A Court must reject an administrative interpretation when there are compelling indications that it is wrong. *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 94, 94 S.Ct. 334, 38 L.Ed.2d 287, 295 (1973); *Marathon Oil Co. v. Kleppe*, supra; *Kenneth v. Schmoll*, 482 F.2d 90, 95 (10th Cir. 1973); *Ute Indian Tribe of Uintah & Ouray Reservation v. Probst*, 428 F.2d 491, 497 (10th Cir. 1970), cert. denied, 400 U.S. 926, 91 S.Ct. 189, 27 L.Ed.2d 186 (1970); *R. V. McGinnis Theatres & Pay T. V., Inc. v. Video Independent Theatres, Inc.*, 386 F.2d 592, 594 (10th Cir. 1967), cert. denied 390 U.S. 1014, 88 S.Ct. 1265, 20 L.Ed.2d 163 (1968). This Court rejects the government's interpretation of U. S. Treasury Regulation § 1.612–3(a)(1).

■ This Court is persuaded that Taxpayer's estimate of zero for royalties expected by him to be received from the overriding royalty interest under the wildcat leases in this case is reasonable. It is the

opinion of the Court that the government's suggestion for averaging production from two leases over 1000 hypothetical wildcat leases to produce a theoretical average estimate of future production from each specific lease is not reasonable and does not meet the requirements of the Regulations.

This Court holds that where, as here, a dealer buys for resale wildcat oil and gas leases with no evidence of conditions favorable to production during the term and sells them, retaining an overriding royalty interest, he is entitled to treat the amount of royalties expected to be received from an overriding royalty share of the production as zero. The formula in § 1.612–3(a)(1) is then applied as:

$$\text{Cost Depletion} = \text{basis in lease} \times \frac{a}{a+0}$$

$$= \text{basis in lease} \times \frac{a}{a}$$

$$= \text{basis in lease} \times 1$$

$$\text{Cost Depletion} = \text{basis in lease}$$

The result permits the Taxpayer to deduct as cost depletion his basis in the lease.

Leases numbered 43 through 50 of the original schedule have been eliminated from this case, and the claim of Taxpayers has been reduced accordingly.

This Court concludes that the sum of $9,975 was erroneously and improperly assessed by the defendant and collected from plaintiffs and that plaintiffs are entitled to recover from the defendant the sum of $9,975, plus statutory interest from December 29, 1978 to date of payment.

This Memorandum Opinion shall constitute the findings of fact and conclusions of law, and additional findings and conclusions are unnecessary.